A & P GENERAL CONTRACTORS, INC., demandante y recurrido, v. ASOCIACIÓN CANÁ, INC., INSURANCE COMPANY OF NORTH AMERICA, BANCO CRÉDITO Y AHORRO PONCEÑO, sustituido por FEDERAL DEPOSIT INSURANCE CORP., demandados y recurrente el último, INSURANCE COMPANY OF NORTH AMERICA, demandante contra coparte, BANCO CRÉDITO Y AHORRO PONCEÑO, sustituido por FEDERAL DEPOSIT INSURANCE CORP., demandado contra coparte.

*Número:* R-80-239    *Resuelto:* 13 de marzo de 1981

*Francis, Doval, Muñoz, Acevedo, Otero & Trías* y *William H. Preston,* abogados de la recurrente; *José Julián Álvarez González* y *Plinio Pérez Marrero,* abogados de la recurrida; *Segurola, Montalvo & Lugo,* abogados de Insurance Company of North America.

El Juez Asociado Señor Negrón García emitió la opinión del Tribunal.

Los hechos que originan esta singular controversia se remontan a enero de 1972, cuando *A & P General Contractors, Inc.,* demandó, entre otros, al *Banco Crédito y Ahorro Ponceño* aduciendo que en 1971 éste, después de haberle concedido dos líneas de crédito montantes a $350,000.00 y $250,000.00, respectivamente, garantizadas por una carta de garantía y pagarés suscritos por sus directores, acordó extenderle una tercera ascendente a $358,000.00 —resguardada por un *pagaré hipotecario al portador* con vencimiento a la presentación por $450,000, suscrito por *M.A.R. Development Corp.*— y que, no obstante, el Banco se negó a hacer desembolsos en relación con ese crédito adicional. Como consecuencia, no pudo terminar el proyecto del edificio multipisos *Santa María II,* para lo cual había gestionado dicha línea de crédito, ocasionándole una serie de daños, pérdidas y gastos reclamados.

En su contestación, el Banco y su sucesora, Federal Deposit Insurance Corporation (FDIC), negaron que hubiera sido la intención de las partes establecer una tercera y adicional línea de crédito y sí una garantía adicional para la deuda ya existente. Formuló reconvención reclamando los préstamos no pagados al Banco.

A & P General Contractors levantó exitosamente contra el Banco y FDIC la doctrina del impedimento colateral por sentencia. Adujo que estaban impedidos de controvertir sus alegaciones de que el Banco estableció la tercera línea de crédito e incumplió con esa obligación contractual. Se basó en la sentencia final y firme del 15 de junio de 1977 del Tribunal Superior, Sala de San Juan, caso Civil Núm. 73-8303 *M.A.R. Development Corp.* v. *Banco Crédito y Ahorro Ponceño*. Revisamos.

# I

Para un entendimiento cabal de la cuestión es imprescindible explorar y determinar, aunque someramente, los contornos de la controversia en el caso promovido por *M.A.R. Development Corporation* (73-8303) y la sentencia allí dictada. Se trata de una acción independiente iniciada por M.A.R. en 23 de noviembre de 1973 —aproximadamente dos años después de incoado el pleito que nos ocupa— que reclamó y obtuvo decreto judicial favorable contra el Banco Crédito para que devolviera un certificado de depósito al portador ascendente a $458,000.00, que había dado en prenda, en sustitución, a su vez, del *pagaré hipotecario al portador* por $450,000.00, que había entregado al Banco al convertirse en garantizadora solidaria de la obligación contraída por A & P General Contractors con el Banco en la transacción de 23 de julio de 1971. De esa sentencia surge que para la adjudicación del litigio incoado por M.A.R., el tribunal se vio precisado a resolver la controversia central entre A & P General Contractors y la F.D.I.C., sucesora del Banco, en el actual litigio. Reconoció la existencia e incumplimiento por el Banco

de una obligación de conceder a A & P General Contractors la mencionada tercera línea adicional de crédito.

Es con arreglo a esa decisión anterior y en virtud de la doctrina del *impedimento colateral por sentencia,* en su uso ofensivo, que subsiguientemente en el caso que está ante nos el tribunal recurrido resolvió que el Banco y su sucesora F.D.I.C. estaban impedidos de relitigar la misma controversia. Como resultado, emitió la sentencia parcial que revisamos a los efectos de que el Banco incumplió su obligación de conceder la tercera línea de crédito a A & P General Contractors contraída el 23 de julio de 1971. Pospuso para ulterior consideración la ventilación de los daños causados.

El foro primario interpretó *Pol Sella* v. *Lugo Christian,* 107 D.P.R. 540 (1978), en el sentido de que en Puerto Rico no está vigente el requisito de identidad o mutualidad en la doctrina de cosa juzgada y, por ende, de impedimento colateral. Aun así concluyó la existencia de vínculos de solidaridad entre A & P General Contractors y M.A.R. Development Corp. en virtud del contrato en el cual este último se convirtió en garantizador solidario de alguna o algunas de las obligaciones del primero, salvando de esta forma el requisito de identidad o mutualidad y legitimando a su vez la firma A & P General Contractors para oponer al Banco la sentencia adversa en el litigio de M.A.R. Finalmente, incorporó a nuestro sistema jurídico el uso ofensivo de la doctrina de impedimento colateral por sentencia según establecido en la jurisdicción federal en el caso rector *Parklane Hosiery Co.* v. *Shore,* 439 U.S. 322 (1979). [1]

---

[1] En el mismo, un accionista formuló acción de clase contra la corporación y algunos de sus oficiales, directores y accionistas, alegando que habían emitido una declaración de *proxy* engañosa. Posteriormente, la "Securities and Exchange Commission" (SEC) instó acción *independiente* en la que se hacía la misma imputación y se solicitaba un interdicto. La acción de la SEC concluyó *primero* mediante sentencia declaratoria que resolvió que la declaración circulada en efecto era engañosa. El demandante en el primer caso planteó entonces que los demandados estaban impedidos de relitigar ese asunto. El Supremo federal, luego de un análisis, permitió

La entidad recurrente, F.D.I.C., argumenta la inaplicabilidad de la doctrina de impedimento colateral, en su uso ofensivo, al no cumplirse con todos los requisitos establecidos en el caso de *Parklane*, supra, y en la Sec. 88 del *Restatement 2d; Judgments*. Analiza, además, el efecto negativo que ello causa en cuanto a los préstamos no satisfechos y aduce varias decisiones que establecen que en Puerto Rico la doctrina de impedimento colateral no puede utilizarse para perpetrar una injusticia.

## II

Hemos de evaluar y comparar la solución fiel y justa del recurso bajo el prisma de dos alternativas posibles. Veamos. *Argumenti gratia* de que es correcta la premisa del tribunal de instancia de que en *Pol Sella* v. *Lugo Christian*, supra, desterramos de nuestra jurisdicción el requisito de *identidad* en la cosa juzgada y, por tanto, de la doctrina de impedimento colateral, aun así la referida doctrina podría plantearse en dos formas o modalidades: defensiva u ofensivamente.[2] La dinámica procesal de cada una se deduce de su nombre, esto es, se levanta *defensivamente* por un demandado, para impedir la litigación de un asunto ya planteado y perdido por el demandante en pleito anterior frente a otra parte. Y se plantea *ofensivamente*, cuando un demandante impide al demandado relitigar aquellos asuntos previamente litigados y perdidos frente a otra parte. Obsérvese que en ambas situaciones, la defensiva y ofensiva, la parte contra la cual se interpone el impedimento: (i) ha litigado; (ii) ha sido la parte perdidosa en el anterior pleito.

Aunque sus definiciones resultan sencillas, aun en aque-

---

el uso ofensivo del impedimento colateral por sentencia y resolvió que la política que se seguiría en las cortes federales era reconocerles discreción para determinar cuándo permitir el uso ofensivo de dicha doctrina, una vez satisfechos ciertos requisitos.

[2]*Blonder-Tongue* v. *University Foundation*, 402 U.S. 313 (1971) y *Parklane*, supra.

llas jurisdicciones que definitivamente han abandonado la regla de identidad o mutualidad, la doctrina de impedimento colateral por sentencia, en sus diferentes usos, no ha sido aplicada con uniformidad. Mientras el uso defensivo de la doctrina —no existiendo identidad de partes— ha sido generalmente aceptado, en su uso ofensivo ha sido objeto de profundos debates. ([3])

Con miras a despejar esas polémicas, el Tribunal Supremo federal, en *Parklane*, supra, luego de discutir las críticas de más peso aducidas contra el uso ofensivo de la referida doctrina([4]) optó por darle vigencia. Sobre el particular señaló:

---

([3]) En contra de los usos ofensivos, en ausencia del requisito de identidad de partes: Note, *The Impacts of Defensive and Offensive Assertion of Collateral Estoppel by a Nonparty*, 35 Geo. Wash. L. Rev. 1010, 1032–36 (1967); Comment, *Nonparties and Preclusion by Judgment: The Privity Rule Reconsidered*, 56 Calif. L. Rev. 1098 (1968); *Spettigue* v. *Mahoney*, 445 P.2d 557 (Ariz. App. 1968); *Reardon* v. *Allen*, 213 A.2d 26 (N.J. Super. 1965); *Albernaz* v. *City of Fall River*, 191 N.E.2d 771 (Mass. 1963); *Nevarov* v. *Caldwell*, 327 P.2d 111 (Calif. App. 1958). Además: Anno., *Mutuality of Estoppel as Prerequisite of Availability of Doctrine of Collateral Estoppel to a Stranger to the Judgment*, 31 A.L.R.3d 1044, 1076–77 (1970).

A favor de los usos ofensivos: A. Vestal, *Res Judicata/Preclusion: Expansion*, 47 So. Cal. L. Rev. 357 (1974); A. Vestal, *Res Judicata Preclusion*, Nueva York, Matthew Bender, 1969, págs. 317–22; B. Currie, *Civil Procedure: The Tempest Brews*, 53 Calif. L. Rev. 25 (1965); *Zdanok* v. *Glidden Company, Durkee Famous Food Division*, 327 F.2d 944 (2nd Cir. 1964); *cert. den.*, 377 U.S. 934 (1964); *B. R. DeWitt, Inc.*, v. *Hall*, 225 N.E.2d 195 (N.Y. 1967); *Waitkus* v. *Pomeroy*, 506 P.2d 392 (Colo. Ct. App. 1972); *United States* v. *United Air Lines, Inc.*, 216 F.Supp. 709 (E.D. Wash. y D. Nev. 1962); *United Air Lines, Inc.* v. *Wiener*, 335 F.2d 379 (9th Cir. 1964), *cert. desest.*, 379 U.S. 951 (1964); *Desmond* v. *Kramer*, 232 A.2d 470 (N.J. 1967); *McCourt* v. *Algiers*, 91 N.W.2d 194 (Wis. 1956); *Garcy Corporation* v. *Home Insurance Company*, 496 F.2d 479 (7th Cir. 1974); *King* v. *Grindstaff*, 200 S.E.2d 799 (N.C. 1973); *Hossler* v. *Barry*, 403 A.2d 762 (Me. 1979).

([4]) Se discuten las siguientes críticas: (1) que el uso ofensivo del impedimento colateral no promueve la economía judicial del mismo modo que el defensivo, pues propicia que partes interesadas queden fuera del pleito en espera de la decisión para beneficiarse de ésta o quedar inmune si el resultado es adverso a sus intereses; (2) la posibilidad de que el demandado en un primer pleito no tenga incentivos suficientes para litigar vigorosamente; y (3) que es injusto permitir el uso ofensivo cuando en la segunda

Hemos concluido que la mejor forma de abordar estos problemas en los tribunales federales no es prohibir la utilización del impedimento colateral en la ofensiva, sino conceder un gran margen de discreción a los tribunales de instancia para que éstos determinen cuándo debe utilizarse. La regla general debe ser que en los casos en que un demandante fácilmente pudo haberse acumulado a la acción original o en aquellos casos en que, bien por las razones discutidas anteriormente o por otras razones, la aplicación del impedimento colateral en la ofensiva sería injusta para un demandado, un juez de instancia no debe permitir el uso del impedimento colateral en la ofensiva. (Pág. 331, traducción nuestra.)

Como guías judiciales estableció la regla básica de que sería injusta su aplicación si concurrían cualesquiera de las siguientes circunstancias: (a) que el demandante pudo fácilmente ser parte en el primer pleito; (b) que el demandado no tuvo a su haber todos los incentivos para litigar completa y rigurosamente las controversias surgidas en el primer pleito; (c) que la determinación judicial en el primer pleito fue inconsistente con otras decisiones sobre la misma cuestión; y (d) que en el segundo pleito el demandado tuvo oportunidades procesales no disponibles en la primera acción, que podrían conllevar un resultado distinto. [5]

■ Con estas pautas presentes, hemos de coincidir con el tribunal de instancia en que en el caso de autos el demandante A & P General Contractors, Inc., que invoca el impedimento, tuvo a su alcance todos los medios procesales que permiten nuestras reglas para intervenir en el primer pleito y no lo hizo. Conociendo las gestiones del Banco demandado para consolidar ambos pleitos, su actitud fue pasiva y más bien de opo-

---

acción el demandado tendría oportunidades procesales que no tuvo en el primer pleito.

[5] No hay consenso entre las autoridades sobre las excepciones o circunstancias en las cuales no debe permitirse la modalidad ofensiva del impedimento colateral por sentencia. Véase, *Restatement of the Law (Second)*, *Judgments*, Sec. 681, App. 88 (Borrador Tentativo Núm. 3, 1976).

sición, pues en el pleito anterior, M.A.R. Development Corp. lo objetó aun cuando su representante legal era el mismo. ([6])

■ Resulta difícil concebir que mientras la doctrina del impedimento colateral tiene su razón de ser en consideraciones de índole económica y procesal —tales como proteger litigantes contra el hostigamiento que conlleva estar sujeto a juicios repetidos sobre la misma controversia, promover la economía judicial al evitar litigios innecesarios y prevenir sentencias inconsistentes— ésta pueda usarse por razón de que se obvió la susodicha economía procesal al no consolidarse ambas acciones, facilitando ello la existencia de este pleito. Lo razonable hubiera sido que se hubieran resuelto juntos.

Las razones expuestas por la parte recurrida explicando por qué no medió consolidación, no nos persuaden. Menos aún, cuando la representación legal estuvo a cargo de los mismos abogados en ambos pleitos.

Bajo este primer prisma, no sería aplicable la doctrina de impedimento colateral por sentencia y, por ende, erró el tribunal de instancia.

### III

Ahora bien, existe otro fundamento por el cual la sentencia recurrida no puede prevalecer. Tanto el juez sentenciador como la parte recurrida sostienen que en *Pol Sella* v. *Lugo Christian,* supra, *abandonamos* la regla de mutualidad o identidad en el impedimento colateral y en cosa juzgada. Examinemos este enfoque.

El artículo 1204 del Código Civil consagra la regla de mutualidad o identidad:

Para que la presunción de la cosa juzgada surta efecto en otro juicio, es necesario que entre el caso resuelto por la sentencia y aquel en que sea invocada, concurra *la más perfecta identidad entre las cosas, las causas, las personas de los litigantes*

---

([6]) Los autos evidencian que el Banco en varias ocasiones intentó la consolidación. M.A.R., representada por sus abogados, siempre se opuso a la consolidación.

*y la calidad con que lo fueron.* 31 L.P.R.A. sec. 3343 (énfasis nuestro).

En *Pol Sella,* si bien es cierto que mencionamos el desa- , rrollo del concepto de identidad de partes más allá de la regla de mutualidad —luego de discutir la existencia de las distintas identidades— respecto a personas, indicamos:

Podría llegarse también a la conclusión de que hay identidad entre las personas de los litigantes y la calidad con que lo fueron si consideramos que la parte realmente interesada tanto en la declaración de estado civil que comprende el Art. 263 del Código Penal, como en la nueva acción impugnatoria de la paternidad, lo es el menor Arnaldo Pol Lugo. En el caso por abandono de menores y específicamente en el procedimiento dirigido a establecer la paternidad, el Estado no suplanta al menor como parte, sino que actúa en auxilio y para beneficio de éste. . . . (Pág. 549, escolios omitidos.)

Este pronunciamiento derrota la interpretación del tribunal a quo y cualquier especulación al respecto.

■ Adviértase que en Puerto Rico tenemos la situación particular de que rigen dos sistemas de derecho, uno en el campo sustantivo, y otro de índole procesal, producto de la influencia del derecho anglosajón proveniente de los Estados Unidos. Con miras a crear un derecho autóctono, nuestra posición siempre ha sido aprovechar los mejores elementos de ambos sistemas (sin menoscabo de acudir a otras latitudes), armonizarlos y hacerlos formar parte de nuestro ordenamiento jurídico. Ello explica la adopción de la figura jurídica "impedimento colateral por sentencia", que surte efectos cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y determina mediante sentencia válida y final. Como resultado, tal determinación es concluyente en un segundo pleito entre *las mismas partes,* aunque estén envueltas causas de acción distintas. *Vidal* v. *Monagas,* 66 D.P.R. 622 (1946); *Long Corporation* v. *Tribl. de Distrito,* 72

D.P.R. 788 (1951); *Fuentes* v. *Tribl. de Distrito*, 73 D.P.R. 959 (1952); *Pereira* v. *Hernández*, 83 D.P.R. 160 (1961).

En estricta juridicidad científica hemos de admitir que el desarrollo de esta doctrina no ha tenido en nuestra jurisdicción una trayectoria definida, pues en ocasiones se ha tratado como institución independiente, mientras en otras se ha considerado una modalidad de la doctrina de cosa juzgada. *Capó Sánchez* v. *Srio. de Hacienda*, 90 D.P.R. 149, 155 (1964); *Daubón Belaval* v. *Srio. de Hacienda*, 106 D.P.R. 400, 407 (1977). Aun así, debe aceptarse que la figura siempre ha sido visualizada como una modalidad de la cosa juzgada en la cual no resulta necesario la identidad de causas. Los principios generales de la doctrina fueron expuestos en *Bolker* v. *Tribunal Superior*, 82 D.P.R. 816, 823–824 (1961):

Para que prospere la excepción de cosa juzgada es necesaria la concurrencia de cuatro identidades: dos objetivas —cosa y causa; *Autoridad de Acueductos* v. *Reyes*, 77 D.P.R. 10, 14–16 (1954); *Silva* v. *Doe*, 75 D.P.R. 209, 214 (1953); *Vidal* v. *Monagas*, 66 D.P.R. 622 (1946); *Junta Insular de Elecciones* v. *Cortes*, 63 D.P.R. 819 (1944); Sentencia Núm. 61 del Tribunal Supremo de España de 20 marzo de 1956 (Jurisp. Civil III, tomo 55, pág. 726); y dos subjetivas —personas y representación. *Camacho* v. *Iglesia Católica*, 72 D.P.R. 353 (1951); *Ex parte Soto; Rodríguez, Int.*, 71 D.P.R. 547 (1950); *Municipio* v. *Ríos*, 61 D.P.R. 102, 105 (1942); *De León* v. *Colón*, 42 D.P.R. 22 (1931).

Así, notamos que nuestra jurisprudencia no había vacilado en acudir a distintas fuentes para interpretar la doctrina de cosa juzgada, recurriendo tanto a textos españoles como a las fuentes de derecho común (*common law*), aun cuando difieren en varios aspectos.[7] Estas diferencias han permi-

---

[7] Véase: Comment, *Litigation Preclusion in Louisiana: "Welch v. Crown Zellerbach Corporation" and the Death of Collateral Estoppel*, 53 Tul. L. Rev. 875 (1979).

tido un desarrollo de ambas figuras —*res judicata* e impedimento colateral por sentencia— distinto al nuestro. [8]

Sin embargo, posteriormente, en el caso de *Lausell Marxuach v. Díaz de Yáñez*, 103 D.P.R. 533 (1975), aclaramos la orientación doctrinaria que seguiríamos:

> La doctrina de cosa juzgada, *res judicata pro veritate habetur*, es de antigua estirpe romana: De León y Olarieta, *Observaciones filosófico-jurídicas acerca de la autoridad de cosa juzgada*, 44 Rev. Gen. de Leg. y Juris. 5, 15–22 (1874). *Es parte de nuestro Derecho Civil y es innecesario, excepto para fines comparativos, acudir a otras fuentes para su análisis. El Art. 1204 de nuestro Código, 31 L.P.R.A. sec. 3343, exige para su aplicación "que entre el caso resuelto por la sentencia y aquél en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron"*. (Pág. 535, énfasis nuestro.)

La importancia de los anteriores señalamientos no debe subestimarse, pues nos sitúa en la perspectiva correcta en el estudio de la figura que nos ocupa.

## IV

■ Teniendo presente los principios generales aplicables de nuestra jurisprudencia, veamos los hechos en los pleitos en cuestión para determinar si, en efecto, concurre la más perfecta identidad entre las cosas, las causas, los litigantes y la calidad de éstos. Lo primero que se pone de manifiesto es que ciertamente está presente el primer requisito de identidad, esto es, identidad de cosas, el "objeto o materia sobre la cual se ejercita la acción". *Lausell Marxuach v. Díaz de Yáñez*, supra, pág. 535. La cosa o el objeto es el contrato entre el Banco, A & P General Contractors, Inc. y M.A.R., el cual es el *mismo* en ambos recursos. Cualquier duda al respecto se

---

[8] En Louisiana, donde la doctrina de impedimento colateral fue de utilidad por años, recientemente fue descartada por la Corte Suprema en *Welch v. Crown Zellerbach Corp.*, 359 So.2d 154 (1978).

disipa al aplicar la regla de Lacoste para determinar si hay o no identidad de objeto: "[La hay si] estatuyendo sobre el objeto de una demanda, el Juez está expuesto a contradecir una decisión anterior afirmando un derecho nacido o naciente o un derecho afirmado por esta decisión precedente. Si no puede estatuir más que exponiéndose a esta contradicción hay identidad de objeto . . . ." E. Jiménez Asenjo, *Sobre el Alcance Real de la Cosa Juzgada*, 184 Rev. G. de Leg. y Juris. 63, 73, nota 1 (1948).

▪ Asimismo no existe duda de que está presente el requisito de identidad de *causas*. En ese análisis resulta innecesario hablar de impedimento colateral por sentencia. Recuérdese que causa "es el motivo de pedir". Scaevola, *Código Civil*, 2da ed., 1958, T. 20, pág. 535. No se refiere "a la razón o motivo de un contrato" sino que "significa el fundamento capital, el origen de las acciones o excepciones planteadas y resueltas". Manresa, *Comentarios al Código Civil Español*, 5ta ed., 1950, T. 8, Vol. 2, págs. 237–238. Así, el Tribunal Supremo de España ha dictaminado que "la diversidad de acciones no impide la estimación de la cosa juzgada cuando la razón y causa de pedir es la misma en una y otra, y por tanto, no es el nombre ni la naturaleza, declarativa o constitutiva, la que pueda impedir identidad de la causa pretendida, sino que en este respecto la decisión es si los hechos y fundamentos de las peticiones son los mismos en lo que afecta a la cuestión planteada". (Sentencia de 19 de febrero de 1962, Manresa, *op. cit.*) Otro decreto establece que "la causa equivale a un fundamento o razón de pedir, siendo la acción mera modalidad procesal que es necesario ejercitar para que aquélla tenga efectividad en juicio; que si son idénticas las cosas y causas, no obsta a la eficacia de la cosa juzgada que a la acción se le dé distinto nombre, sin que desaparezca la identidad básica de la presunción porque en el segundo juicio se haga un pedimento distinto no decidido en el primero . . .". (Sentencia de 30 de octubre de 1965.)

En cuanto a la *identidad de personas*, tenemos que concluir que M.A.R. Development Corp. y A. & P. General Contractors, Inc., no son la misma persona. Esta solución se impone aun tomando en cuenta que el Art. 1204 del Código Civil dispone que "[s]e entiende que hay identidad de personas siempre que los litigantes del segundo pleito sean causahabientes de los que contendieron en el pleito anterior, o *estén unidos a ellos por vínculos de solidaridad . . .*". (Énfasis suplido.) 31 L.P.R.A. sec. 3343.

■ Los vínculos de solidaridad requeridos para que exista la identidad de personas son aquellos en los cuales el "que litiga en el segundo pleito ejercita la misma acción e invoca iguales fundamentos y se apoya en los mismos títulos que en el primero". *Sucn. Zayas Berríos* v. *Berríos*, 90 D.P.R. 551, 565 (1964); *González* v. *Méndez, et al.*, 15 D.P.R. 701, 717 (1909). La solidaridad que se persigue es aquella capaz de situar en posición tal a las partes, como si fueran una sola en relación a las prestaciones que puedan estar en litigio, y es el mismo tipo de relación que se produce entre el causahabiente y el causante. Concluimos que el hecho de que las partes en ambos pleitos se encuentren en posición de deudores solidarios no es suficiente para lograr lo anterior. Si bien es cierto que tanto M.A.R. Development Corp. como A & P General Contractors, Inc., se encontraban obligadas solidariamente para con el Banco, esa misma relación producía a su vez efectos diferentes para las partes: la relación de M.A.R. era más bien un contrato entre ella y A & P General Contractors, Inc., en beneficio de tercero, en este caso el Banco. En la práctica podemos observar cómo mientras la supuesta acción u omisión del Banco produce en el caso de M.A.R. tan solo una acción de reivindicación de prenda, en el caso de A & P produce una acción de daños de tipo contractual.

No sólo hay ausencia de identidad entre las partes, sino también de la *calidad* con que lo fueron. En el primer pleito, la demandante M.A.R. entra en calidad de garantizador, un

deudor prendatario sujeto a una obligación accesoria que desaparece una vez se extingue la obligación principal y no a la inversa. En el segundo pleito, la demandante A & P General Contractors, Inc., está como el deudor principal. Al respecto son ilustrativas las palabras de Gómez Orbaneja: "De acuerdo con Hellwig, falta asimismo, la identidad si en el primer pleito litiga el acreedor prendario o el usufructuario, y en el segundo, el propietario. Faltará también, en principio si litiga un acreedor o un propietario fiduciario, o el comitente, y en el segundo pleito entran el propietario original o el comitente . . .". E. Gómez Orbaneja, *Derecho Procesal Civil*, 7ma ed., Madrid, 1975, Vol. 1, pág. 406.

En resumen, faltando algunos de los requisitos de la regla de la identidad, es forzoso concluir la inaplicabilidad al caso de autos de la doctrina de la cosa juzgada. Tampoco es esgrimible la de impedimento colateral por sentencia, tal y como ha sido adoptada en nuestro ordenamiento jurídico.

*Se dictará sentencia que revoque la parcial de 11 de abril de 1980 y se devolverá el caso para trámites ulteriores compatibles con lo expuesto.*

El Juez Asociado Señor Irizarry Yunqué concurre en el resultado sin opinión. El Juez Presidente Señor Trías Monge se inhibió y el Juez Asociado Señor Díaz Cruz no intervino.