# 2003 DTA 115

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL V DE PONCE Y AIBONITO

IGNACIO RIVERA STELLA Y ELIZABETH LOYOLA SAEZ, AMBOS POR SI Y EN
REPRESENTACION DE LA SOCIEDAD LEGAL QUE COMPONEN
Recurridos

v.

TRANS OCEANIC LIFE INSURANCE COMPANY
Peticionaria

Núm. KLCE-03-00634

San Juan, Puerto Rico, a 3 de julio de 2003

Panel integrado por su Presidente, el Juez Brau Ramírez,
el Juez Aponte Hernández y la Juez Pabón Charneco

Pabón Charneco, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Comparece ante nos Trans Oceanic Life Insurance Company, en adelante, TOLIC, solicitando la revisión de una Resolución emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce. Mediante dicho dictamen, el tribunal *a quo* denegó una "*Moción de Desestimación*" presentada por TOLIC.

Por las razones que esbozamos a continuación, se expide el auto solicitado y se revoca la Resolución recurrida.

**I**

Conforme surge del recurso ante nuestra consideración, el 26 de marzo de 1996, Ignacio Rivera Stella, Elizabeth Loyola Sáez y la Sociedad Legal de Gananciales compuesta por ambos, en adelante, los recurridos, incoaron demanda sobre cobro de dinero e *injunction* contra TOLIC (JCD1996-0091). Génesis de dicha acción lo fue una alegada cancelación de un contrato de agente general de seguros.

Se desprende de autos que TOLIC es una compañía de seguros dedicada a la venta de pólizas de seguros de vida, salud, accidente y anualidades. En 1988, TOLIC contrató a Ignacio Rivera Stella, en adelante, Rivera, como agente general de la compañía. A tales efectos, suscribieron un acuerdo intitulado "*General Agent´s Contract*". Mediante dicho acuerdo, se autorizó a Rivera a gestionar solicitudes de pólizas de seguros de vida, accidentes, salud y anualidades. Asimismo, se le autorizó a cobrar la prima inicial de cada póliza, la cual debía remitir inmediatamente a TOLIC, y a entregar al asegurado la póliza de seguros, conforme las instrucciones de ésta. Bajo el contrato suscrito entre las partes, Rivera recibiría comisiones a base de las pólizas que eventualmente fueran emitidas y refrendadas por TOLIC.

Debido a diferencias surgidas entre las partes, TOLIC dio por terminado el contrato de agencia general. En vista de lo anterior, se interpuso la demanda mencionada. En la misma, los recurridos plantearon la violación del Art. 2 de la Ley Núm. 75 de 24 de junio de 1964, según enmendada, 10 L.P.R.A. sec. 278a. Alegaron que la relación con TOLIC era una de distribuidor-principal y que TOLIC la había terminado de forma unilateral y sin justa causa, en violación a la Ley Núm.75, *supra*.

Dicha demanda expresa:

*"12...*

*13... La terminación unilateral por parte de "TOLICO" (TOLIC) del contrato de agente general del señor Rivera y las actuaciones torticeras de los demandados [TOLIC] le han causado daños económicos a los demandantes [recurridos] consistentes en pérdidas de lo invertido para el establecimiento, mantenimiento y funcionamiento de sus tres oficinas; promoción, mercadeo de sus servicios como agente general de "TOLICO" (TOLIC); reclutamiento, adiestramiento e incentivos a los agentes a su cargo; pago de personal clerical, equipo y materiales de oficina, plusvalía del negocio; y beneficios por comisiones en un negocio cuyo volumen se estima en $4,000,000.00 anuales."*

Véase, págs. 25-28 del Apéndice.

TOLIC emitió alegación responsiva. Adujo, entre otros extremos, como defensa afirmativa que Rivera no era un distribuidor conforme la Ley Núm. 75, *supra*, y sí un agente a comisión o empleado de la compañía.

Trabada la controversia entre las partes, y luego de los trámites procesales de rigor, ■ el Tribunal de Primera Instancia determinó, en lo relevante, que Rivera era un *"distribuidor"* con derecho a los beneficios dispuestos en la Ley Núm. 75, *supra*. En su consecuencia, expidió el *injunction* preliminar y ordenó a TOLIC a poner en fuerza y vigor el contrato suscrito entre las partes. El tribunal dejó pendiente de resolver si hubo o no justa causa para la terminación del contrato de distribución. ■

Posteriormente, y ante la presentación de una solicitud de sentencia sumaria incoada por Rivera, el tribunal *a quo* emitió Sentencia Parcial a favor de éste. Resolvió dicho foro que, conforme a la prueba desfilada, Rivera era un distribuidor a tenor con lo establecido en la Ley Núm. 75, *supra*. TOLIC y sus oficiales acudieron ante este Tribunal quien confirmó el dictamen emitido.

Mientras tanto, el 8 de febrero de 1999, los recurridos presentaron una segunda demanda contra TOLIC por el pago de comisiones adeudadas en virtud del mencionado contrato (JCD 1999-0112). En ese momento, los trámites procesales del primer pleito estaban paralizados mientras discurrían los procedimientos apelativos.

TOLIC notificó al Tribunal de Primera Instancia de la presentación de la demanda incoada. Dicho foro emitió Resolución la cual indicaba, en lo pertinente:

*"...*

*Por Cuanto, recientemente se nos notifica mediante escritos que la parte demandante Ignacio Rivera ha presentado otros escritos y ha realizado trámites sobre esta misma reclamación ignorando lo atendido, resuelto y ordenado por esta Sala 602, inclusive ha presentado el pleito número JCD1999-0112 (asignado a la Sala 604) presentado el pleito el 8 de febrero de 1999 en el cual se pretende litigar los mismos asuntos atendidos y resueltos en otra Sala;*

*Por Tanto, el tribunal advierte al demandante [Rivera] y a su abogado que de ser esto cierto deberá desistir de ese otro pleito de inmediato.*

*..."*.

Véase págs. 52 y 53 del Apéndice.

Luego de celebrada una vista, el tribunal *a quo* ordenó la consolidación de ambos pleitos. Dicha Orden lee:

*"...que en el caso JCD-1999-0112 se consolide con el caso JCD-1996-0091... que antes atendía la Sala 604. En vista de que se ha hecho la determinación...que todas las controversias de este caso (JCD-1999-0112)... surgen del mismo contrato existente entre las partes analizado en el caso JCD-1996-0091, en relación con el cual está pendiente de adjudicar por el foro apelativo -Tribunal Supremo- que ley es la aplicable a dicho contrato para determinar el alcance de sus cláusulas:*

*...el caso JCD1999-0112 también le es de aplicación nuestra orden de paralización emitida en el caso hasta que el Tribunal Supremo se exprese...".*

Véase pág. 55 del Apéndice.

Mientras tanto, TOLIC y sus oficiales, inconformes con la determinación de este Tribunal, acudieron al Tribunal Supremo. Dicho Foro revocó la determinación emitida y resolvió que Rivera no era un *"distribuidor"* para los efectos de la Ley Núm. 75, *supra*. En su consecuencia, expidió el auto solicitado, dictó Sentencia revocando el dictamen de este Tribunal y desestimó la demanda. Insatisfecho con el dictamen emitido, Rivera presentó reconsideración. En dicho escrito, señaló:

*"8. ...*

*9. ...Este Honorable Tribunal en su Sentencia de 18 de julio de 2002 ha ignorado, además, que en la demanda que desestima se acumuló otra causa de acción contra los restantes codemandados y promoventes del recurso que aquí nos ocupa, por interferencia culposa con el contrato entre TOLIC y el señor Rivera Stella, apoyada ésta en el Art. 1802 del Código Civil. Por otra parte, mediante Resolución dada el 4 de febrero de 2000, el Tribunal de Primera Instancia ordenó que otro pleito sobre cobro de dinero e injunction del señor Rivera contra TOLIC fuese consolidado con el de instancia que provocó esta apelación. Este caso nada tiene que ver para su resolución con la que no puede quedar adversamente afectado por la Sentencia.*

*10. ...*

*11. Tampoco sirve a los fines de la justicia la desestimación de una demanda ignorando las otras causas de acción independientes a la controversia sobre la aplicabilidad de la Ley de Contratos de Distribución, supra, que se acumularon y consolidaron en la demanda original, y que todavía no han sido consideradas en sus méritos por el tribunal de instancia ni han sido objeto de consideración en los distintos recursos ante el TCA y ni ante este mismo Tribunal.".*

El Tribunal Supremo denegó la reconsideración presentada. La Sentencia advino final y firme.

Así las cosas, y continuando los procedimientos ante el tribunal *a quo*, TOLIC presentó una *"Moción de Desestimación"* referente al pleito JCD1999-0112. Descansó su petición en la doctrina de cosa juzgada.

Los recurridos presentaron oportuna oposición. Alegaron que la Sentencia emitida por el Tribunal Supremo iba dirigida a dictaminar que Rivera no era un distribuidor conforme la Ley Núm. 75, *supra*. Asimismo, señalaron que las causas de acción del pleito JDP1999-0112 y el del JCD 1996-0091 eran distintas. Expusieron:

*"La causa sobre cancelación de contrato surgió el 13 de marzo de 1996, y la de cobro de dinero, cuando en noviembre de 1998 se dejaron de pagar comisiones. Son dos conductas, transacciones u ocurrencias distintas. El reclamo interdictal y de cobro que en el presente caso hacemos está relacionado al pago de comisiones devengadas y a la rendición de cuentas, según provee el propio contrato."*

Véase pág. 75 del Apéndice.

El 24 de marzo de 2003, notificada el 11 de abril de 2003, el tribunal *a quo* denegó el escrito interpuesto por TOLIC. Expresó dicho Foro:

"...

*Entendemos que la determinación del Tribunal Supremo no tuvo el efecto de determinar que los demandantes [los recurridos] en el caso JDP1999-0112 no tendrían derecho a remedio alguno bajo los términos del acuerdo suscrito entre ellos. El Tribunal simplemente evaluó en aquel caso si aplicaban o no los beneficios de la Ley 75 bajo los hechos allí planteados y si el Sr. Rivera Stella contaba con la protección de [la] Ley de Contratos de Distribución.*"

Véase pág. 1 del Apéndice.

Inconforme con dicha determinación, recurre ante nos TOLIC mediante la presentación del presente recurso. Junto con su recurso acompañó una *"Moción para Solicitar la Paralización de los Procedimientos en el Tribunal de Primera Instancia".*

El 20 de mayo de 2002, ordenamos a los recurridos mostraran causa por la cual no debíamos expedir el auto solicitado. Habiendo comparecido dicha parte, procedemos conforme intimado.

## II

En su escrito, TOLIC plantea que incidió el Tribunal de Primera Instancia al denegar la solicitud de desestimación presentada resolviendo, por lo tanto, que no es de aplicación la doctrina de impedimento colateral o cosa juzgada en el caso de autos.

## III

La doctrina de la cosa juzgada está fundada en el interés del Estado de que se le ponga fin a los litigios, y en la deseabilidad de que no se someta a un ciudadano a las molestias que supone litigar la misma causa en más de una ocasión. *A & P. Gen. Contractors v. Asoc. Caná*, 110 D.P.R. 753, 762 (1981). Se trata de consideraciones de orden público y de necesidad procesal. La doctrina persigue como propósito proteger a los litigantes contra lo que representa defenderse o probar sus reclamaciones en repetidas ocasiones tratándose de la misma controversia; promover la economía judicial y administrativa al evitar litigios innecesarios y evitar decisiones inconsistentes. *Rodríguez Rodríguez v. Colberg Comas*, 131 D.P.R. 212 (1992); *Zambrana v. Tribunal Superior*, 100 D.P.R. 179 (1971).

En nuestro ordenamiento civil, la cosa juzgada está reglamentada por el Art. 1204 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3343. La doctrina requiere, para su aplicación, que concurran *"la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron"*. 32 L.P.R.A. sec. 1793; *Fatach v. Triple S, Inc.*, 147 D.P.R. 882 (1999); *Rodríguez Rodríguez v. Colberg Compas, supra; Díaz v. Navieras de P.R.*, 118 D.P.R. 297, 304-305 (1987); *Pagán Hernández v. U.P.R.*, 107 D.P.R. 720, 732 (1978).

El Tribunal Supremo de Puerto Rico ha señalado que el requisito de identidad de causa significa la razón o el motivo de pedir, esto es, *"el fundamento capital, el origen de las acciones o excepciones planteadas y resultas"*. Existe identidad de causas *"cuando la nueva acción estuviera como embebida en la primera, o fuese consecuencia inseparable de la misma"*. *Acevedo v. Western Digital Caribe, Inc.*, 140 D.P.R. 452, 464 (1996); *A. & P. Gen. Contractors v. Asoc. Caná, supra; Mercado Riera v. Mercado Riera*, 100 D.P.R. 940, 951-952 (1972); véase, además, Manresa, *Comentarios al Código Civil Español*, Madrid, Ed. Reus, 1967, T. VIII, Vol. II, pág. 277, *et seq.*

En cuanto al requisito de la identidad de cosa, el mismo se refiere al objeto o materia sobre el cual se ejercita la acción. *Rodríguez Rodríguez v. Colberg Comas, supra*; *A. & P Gen. Contractors v. Asoc. Caná, supra*; *Lausell Marxuach v. Díaz de Yáñez*, 103 D.P.R. 533, 535 (1975). Basta que el pleito anterior se refiera al mismo asunto planteado en el nuevo, aunque en el uno se abordase totalmente y el otro de manera parcial. *Rodríguez Rodríguez v. Colberg Comas, supra*.

El requisito de identidad de personas sigue la regla de la mutualidad. Esto es, se requiere que las personas hubieran sido partes en el pleito anterior o que estén en una relación mutua con dichas partes. *Rodríguez Rodríguez v. Colberg Comas, supra*; *P.I.P. v. C.E.E.*, 120 D.P.R. 580, 605 (1988); *A & P Gen. Contractors v. Asoc. Caná, supra*.

El Art. 1204 del Código Civil establece que *"se entiende que hay identidad de personas siempre que los litigantes en el segundo pleito sean causahabientes de los que entendieron en el pleito anterior, o estén unidos por vínculos de solidaridad o por los que establece la indivisibilidad de las prestaciones."* 31 L.P.R.A. sec. 3343.

Para que la presunción de cosa juzgada surta efecto se requiere que se haya emitido un dictamen válido que adjudique finalmente la reclamación del demandante. Esto presupone que la sentencia original que luego se invoca en apoyo de la defensa de cosa juzgada haya sido dictada por un tribunal con jurisdicción. *P.R.T.C. v. Unión Indep. Emp. Telefónicos*, 131 D.P.R. 171, 193 (1992); *J.R.T. v. Hospital de la Concepción*, 114 D.P.R. 372, 381 (1983).

La doctrina de cosa juzgada no se aplica de manera automática en todos los casos, sino que constituye más bien una regla práctica de justicia sustancial. *Banco de la Vivienda v. Carlo Ortiz,* 130 D.P.R. 730, 739 (1992); *Pagán Hernández v. U.P.R., supra*.

Por otro lado, el Tribunal Supremo también ha reconocido el impedimento colateral por sentencia y el fraccionamiento de causa de acción como modalidades de la cosa juzgada, en la cual no resulta necesaria la identidad de causas.

El impedimento colateral por sentencia, conforme reseñado, es una modalidad de la cosa juzgada, en la cual no resulta necesaria la identidad de causas. El impedimento colateral por sentencia opera cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y determina mediante sentencia válida y final, y tal determinación es concluyente en un segundo pleito entre las mismas partes. *Fatach v. Triple S, Inc., supra; Acevedo v. Western Digital Caribe, Inc., supra; Rodríguez Rodríguez v. Colberg Comas, supra; A & P Gen. Contractors v. Asoc. Caná, supra*.

En su modalidad de fraccionamiento de causa de acción, la cosa juzgada opera como un impedimento a que se litiguen en un segundo litigio, reclamaciones que pudieron haberse levantado y adjudicado con propiedad en un pleito anterior entre las mismas partes, y que surgen del mismo núcleo de hechos operativos, aunque tales reclamaciones, como cuestión de hecho, no hubiesen sido expresamente levantadas en el primer proceso. Véase, *Díaz Maldonado v. Lacot*, 123 D.P.R. 261, 274 (1989); *Díaz v. Navieras de Puerto Rico, Inc., supra; Pagán Hernández v. U.P.R., supra*.

La defensa de cosa juzgada, en su modalidad de fraccionamiento de causas, ha sido reconocida en nuestra jurisprudencia como aplicable a situaciones en que una parte presenta una petición de *injunction*, obtiene sentencia favorable y después insta acción por los daños sufridos, incluyendo aquéllos que se le causaron con anterioridad a, y durante la tramitación del *injunction*.

En *Cruz v. Ortiz*, 82 D.P.R. 834 (1961), se reconoció la doctrina de cosa juzgada, en la modalidad de

fraccionamiento de causas, cuando una parte instó un pleito original de *injunction* y no reclamó daños y perjuicios que ya existían o eran conocidos por el demandante; y los reclamó después, en una segunda acción civil de daños y perjuicios. Sobre esto, el Tribunal Supremo señaló lo siguiente:

*"Considerados todos los factores que hemos apuntado, y especialmente el desarrollo de nuestro sistema procesal civil que se encuentra a la vanguardia en cuanto al propósito de dispensar justicia rápida, y que localmente no impera la división entre las acciones en ley y las acciones en equidad, establecemos como norma local que la regla de fraccionamiento de las causas de acción impide a un demandante reclamar en un pleito posterior por daños que existían y se causaron mientras se tramitaba un recurso de 'injunction' para impedir o prohibir precisamente la continuación de los actos y actividades generadoras de los daños. Creemos, sin embargo, que la aplicación debe limitarse a aquellos daños que hubieren podido reclamarse y probarse dentro del recurso de 'injunction'."*

A la pág. 844.

Posteriormente, en *Zambrana v. Tribunal Superior*, 100 D.P.R. 179 (1979), el Tribunal Supremo reiteró:

*"La defensa de cosa juzgada, en su aspecto de fraccionamiento de causa de acción, se aplica a toda reclamación posterior entre las mismas partes sobre el mismo asunto. Avellanet v. Porto Rican Express, 64 D. P.R. 694 (1945); Cruz v. Ortiz, 82 D.P.R. 834 (1961). El propósito de esta defensa es promover la finalidad de las controversias judiciales y evitar las continuas molestias a una parte con la presentación sucesiva de varios pleitos relacionados con el mismo asunto."*

A la pág. 181.

En *Mercado Riera v. Mercado Riera, supra,* el Tribunal Supremo de Puerto Rico explicó el alcance de la doctrina de cosa juzgada, en la modalidad de fraccionamiento de la causa de acción, y señaló lo siguiente:

*"La doctrina de cosa juzgada impide que se litigue en un pleito una reclamación.que pudo haberse litigado y adjudicado en un pleito anterior entre las mismas partes y sobre la misma causa de acción... No existe controversia alguna en cuanto a que la reclamación de daños y perjuicios pudo haberse litigado y adjudicado en el anterior pleito de disolución de sociedad... Un análisis del pleito de disolución y de la demanda radicada en el presente pleito de disolución y de la demanda radicada en el presente pleito de daños y perjuicios, demuestra que ambas reclamaciones se fundan en las actuaciones del socio gestor en violación del contrato de sociedad. La prueba necesaria para establecer ambas reclamaciones es idéntica. Las alegaciones que en la demanda en el actual pleito van dirigidas a sostener la reclamación de daños y perjuicios se fundan en conclusiones de hecho y de derecho emitidas en el pleito de disolución. La única prueba iría dirigida a establecer la cuantía de los daños reclamados. Lo que se pretende es obtener un remedio adicional. El remedio, sin embargo, no es un elemento integrante de la causa de acción, de manera que no procede una acción de daños basada en un derecho adjudicado en un pleito anterior entre las mismas partes en el cual debieron reclamarse los daños."*

A las págs. 950-953.

Desde entonces, esta modalidad de la doctrina de cosa juzgada ha sido reiterada por el Tribunal Supremo en innumerables casos. En *Pagán v. U.P.R., supra,* se resolvió que:

*"El efecto de la doctrina de cosa juzgada, cuando ésta aplica, es que la sentencia dictada en un pleito anterior impide que se litiguen en un pleito posterior entre las mismas partes y sobre la misma causa de acción y cosas las cuestiones ya litigadas y adjudicadas y aquéllas que pudieron haber sido litigadas y adjudicadas*

*con propiedad en la acción anterior."*

A las págs. 732-733.

## IV

Dentro del marco jurídico antes enunciado, procedamos a dilucidar la controversia ante nos. En su escrito, TOLIC nos plantea que la demanda del pleito JCD1999-0112 *"no procede bajo la aplicación de la doctrina de impedimento colateral o cosa juzgada comúnmente referido como fraccionamiento de la causa de acción."*

Por su parte, los recurridos nos alegan que los argumentos presentados en su presente solicitud son distintos a los levantados en la ocasión anterior. Argumentan que la causa sobre cancelación de contrato surgió el 13 de marzo de 1996, y la de cobro de dinero cuando en noviembre de 1998 se dejaron de pagar comisiones. Arguyen que, por lo tanto, son dos conductas, transacciones u ocurrencias distintas. El reclamo interdictal y de cobro que en el presente caso hacen está relacionado al pago de comisiones devengadas y a la rendición de cuentas, según provee el propio contrato. Por otro lado, indican que en el recurso presentado ante el Tribunal Supremo sólo se cuestionaba si Rivera era o no un distribuidor al amparo de la Ley Núm. 75, *supra*.

Un análisis de los documentos que obran en el expediente revela que en el pleito JDP1996-0091 los recurridos presentaron una *"Moción Solicitando Orden para la Liquidación y Pago de Comisiones"*. (Véase nota al calce Núm. 2 de esta Sentencia). Se señala en el escrito:

*"(c). En las cláusulas 5, 6, 7, 8 y 12 del contrato entre TOLIC y el señor Rivera se dispone en torno a la compensación del agente general. La compensación se hace a base de comisiones sobre las primas pagadas en efectivo sólo por las pólizas expedidas durante la vigencia del contrato. Cláusula 5. Esto se hace a base de los por cientos que según el tipo de seguro y los años de renovación que se disponen en un anejo al contrato. 'General Agent's Schedule of Commissions'. En el caso que nos ocupa, los seguros de cáncer van del 50% el primer año y el 15% hasta el 10mo año de renovación. No obstante, los pagos de comisiones a los agentes generales son reducidos por las comisiones que TOLIC paga directamente a los agentes (Cláusula 5) y por las pólizas nuevas reemplazadas (Cláusula 6). En adición, al agente general le deberá reembolsar a TOLIC cualquier pago de comisiones devengadas o adelantadas sobre primas de pólizas reembolsadas. Cláusula 5."*

Véase, págs. 29-33 del Apéndice.

Por su parte, la demanda incoada (JCD1999-0112) sobre cobro de dinero e *injunction* solicitaba:

*"...*

*3. En las cláusulas 5, 6, 7, 8 y 12 del contrato entre TOLIC y el señor Rivera se dispone en torno a la compensación del agente general. La compensación se hace a base de comisiones sobre las primas pagadas en efectivo sólo por las pólizas expedidas durante la vigencia del contrato. Cláusula 5. Esto se hace a base de los por cientos que según el tipo de seguro y los años de renovación se disponen en el anejo del contrato titulado 'General Agent's Schedule of Commissión'. En el caso que nos ocupa, los seguros de cáncer van del 50% el primer año y el 15% hasta el 10mo año de renovación. No obstante, los pagos de comisiones a los agentes generales son reducidos por las comisiones que TOLIC paga directamente a los agentes (Cláusula 5) y por las pólizas nuevas reemplazadas (Cláusula 6). En adición, el agente general le deberá reembolsar a TOLIC cualquier pago de comisiones devengadas o adelantadas sobre primas de pólizas reembolsadas. Cláusula 5.*

*4. Por otra parte, si el contrato se da por terminado por una de las partes pasados 60 meses desde su efectividad, el agente general continuará percibiendo comisiones hasta el décimo año de la póliza. Cláusula 7. No obstante, según el propio contrato, el derecho al pago se pierde por el no pago de la prima y la*

*reasignación de la póliza a otro agente o agente general (Cláusula 7(a)), así como en caso de que la cancelación del contrato de un agente con TOLIC y éste es eventualmente recontratado por TOLIC. Cláusula 7 (e).*

*5. ...*

*8. Los pagos mensuales que ha hecho TOLIC luego de la cancelación del· contrato, no han estado acompañados de informes sobre los estados de las cuentas de los agentes que estuvieron asignados a la agencia de señor Ignacio Rivera y sobre los quienes él tenía y tiene obligaciones y derechos. El único informe que sobre ello se ha brindado desde entonces tiene fecha del 31 de diciembre de 1995, o sea, casi tres años antes de la cancelación del contrato de agencia.*"

Véase, págs. 36-39 del Apéndice.

Una lectura de ambos documentos revela que son prácticamente idénticos. Es evidente que en el caso JDP1996-0091, los recurridos acudieron ante el Tribunal de Primera Instancia solicitando *"procediera de inmediato con la liquidación y pago de los balances de las cuentas que tengan un balance a favor del señor Ignacio Rivera"* (Véase súplica de *"Moción Solicitando Orden para la Liquidación y Pago de Comisiones"*). Asimismo, se solicitó TOLIC proveyera un listado actualizado de las cuentas de sus agentes para el período comprendido entre enero de 1996 ██ al presente y que en lo sucesivo TOLIC sometiera dicha información junto a los pagos mensuales por renovaciones. El tribunal *a quo* no consideró dicha moción y los recurridos no solicitaron se resolviera la misma ni efectuaron trámite procesal adicional con la misma. Lo anterior, somos de opinión, impide la relitigación de esta cuestión.

Los recurridos plantean que los argumentos presentados en su presente solicitud son distintos a los levantados en la ocasión anterior. Sin embargo, independientemente de la denominación otorgada por los recurridos, y de los términos en que dicha parte pudo haber fraseado el mismo, la actuación de los recurridos constituyó una comparecencia afirmativa, y una solicitud de remedio ante el foro de Primera Instancia. A tales efectos, los recurridos estaban obligados a acumular todos sus planteamientos y no a fraccionar los mismos.

Del expediente se desprende que los requisitos de la doctrina están presentes en el caso de autos. La solicitud sobre *"las comisiones adquiridas"* fueron resueltas mediante una sentencia válida, final y firme. En ambos casos, los recurridos alegaron que TOLIC les había cancelado indebidamente el contrato adeudándose comisiones. Los mismos envuelven iguales partes, contrato y fuente de ingreso, comisiones netas de los adelantos y las comisiones *"adquiridas"*.

Por otro lado, y conforme reseñado, durante el trámite procesal del caso JDP1996-0091, los recurridos presentaron la *"Moción Solicitando Orden para la Liquidación y Pago de Comisiones"* donde se requirió el pago provisional de las comisiones. Asimismo, en la reconsideración presentada ante el Tribunal Supremo, los recurridos le plantearon a dicho Foro *"sobre las otras causas de acción independientes a la controversia sobre la aplicabilidad de la Ley de Contratos de Distribución...".* El Tribunal Supremo, sin embargo, procedió a desestimar la causa de acción del pleito JDP1996-0091.

En conclusión, hemos examinado los documentos que obran en autos y somos de opinión de que el dictamen emitido en el caso JDP1996-0091, efectivamente constituye cosa juzgada en torno a los planteamientos ahora esgrimidos por los recurridos.

## V

Por las razones antes esbozadas, se expide el auto solicitado y se revoca la Resolución recurrida. Se desestima la causa de acción incoada.

Así lo acordó y manda el Tribunal y lo certifica la señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 2003 DTA 115

**1.** Durante esta etapa, los recurridos presentaron escrito intitulado *"Moción Solicitando Orden para la Liquidación y Pago de Comisiones"*. Se solicitó al tribunal *a quo*, entre otros extremos, que se procediera inmediatamente con la liquidación y pago de los balances de las cuentas que tuvieran un balance a favor de Rivera.

**2.** De esta Resolución, TOLIC y sus oficiales, mediante recursos independientes, recurrieron a este Tribunal quien declinó intervenir. Expidió el auto solicitado, no obstante, a fin de ordenar la celebración de una vista con el propósito de fijarle una fianza a TOLIC para responder por los daños que se le pudieran causar a Rivera y dejar sin efecto el *injunction* preliminar decretado. Inconformes, los oficiales presentaron petición de *certiorari* ante el Tribunal Supremo, la cual fue denegada.

**3.** Obsérvese que los recurridos arguyen que la causa de acción de la demanda JCD-1999-0112 sobre cobro de dinero surgió en noviembre de 1998. Sin embargo, se desprende de la demanda que el alegado incumplimiento de TOLIC con proveer las listas, entre otros extremos, databa desde 1996, fecha de la presentación de la primera demanda.