# 2004 DTA 115

## TRIBUNAL DE CIRCUITO DE APELACIONES
## REGIÓN JUDICIAL DE CAROLINA

EMPRESS HOTEL, INC., CARL PALERMO, LINDA PALERMO,
ANTHONY PALERMO, LORAINE PALERMO DE DAVIS
Demandantes-Apelados

v.

BENJAMÍN ACOSTA ROBLES, POR SÍ Y EN REPRESENTACIÓN DE
LA SOCIEDAD LEGAL DE GANANCIALES CONSTITUÍDA CON
JOSEFINA GONZÁLEZ; BENJ. ACOSTA, INC.
Demandados-Apelantes

BAY VIEW CLAIMS MANAGEMENT, INC., ISABELLE HEATHERINGTON, ASOCIACIÓN DE
GARANTÍA DE SEGUROS MISCELÁNEOS DE PUERTO RICO
Demandados-Apelados

Núm. KLAN-02-00828

San Juan, Puerto Rico, a 7 de junio de 2004

Panel integrado por su Presidente, Juez Miranda De Hostos,
y los Jueces Hernández Torres y Martínez Torres

Hernández Torres, Jueza Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

Comparece ante nos Benj. Acosta, Inc. y Benjamín Acosta Robles por sí y en representación de la Sociedad Legal de Gananciales constituida con Josefina González, parte codemandada-apelante, y nos solicita la revisión de una sentencia enmendada emitida por el Tribunal de Primera Instancia, Sala de Carolina (Hon. Sonsire Ramos Soler, Juez), el 2 de julio de 2002. Mediante la referida sentencia enmendada, el foro de instancia declaró con lugar la demanda en daños y perjuicios presentada por la parte demandante-apelada, Empress Hotel, Inc. (en adelante Empress); Carl, Anthony y Loraine, todos de apellidos Palermo. También, el Tribunal de Primera Instancia le concedió a Empress doscientos tres mil trescientos noventa dólares ($203,390.00) por concepto de pérdida de ingresos futuros por interrupción de negocio, doscientos sesenta mil cuatrocientos noventa y cinco dólares ($260,495.00) por concepto de pérdida de ingresos pasados por interrupción de negocio y ciento catorce mil trescientos noventa y tres dólares con dos centavos ($114,393.02); a Carl Palermo cien mil dólares

($100,000.00) y a Anthony y Lorraine de apellido Palermo veinte mil dólares ($20,000.00) por concepto de angustias y sufrimientos mentales. Además, dispuso que la Asociación de Garantías de Seguros Misceláneos respondería exclusivamente hasta el monto de ciento cincuenta mil dólares ($150,000.00). Por último, le impuso a la parte demandada-apelante, Benj. Acosta Inc. y a los esposos Acosta-González, el pago de las costas, gastos e intereses al siete por ciento (7%) desde el momento de radicarse esta causa de acción, según lo ha establecido el Comisionado de Instituciones Financieras, más diez mil dólares ($10,000.00) en concepto de honorarios de abogados por temeridad. Por último, el Tribunal de Primera Instancia declaró con lugar el desistimiento con perjuicio solicitado por la parte demandante-apelada, con relación a las partes codemandadas-apelantes que se les había anotado la rebeldía, Isabelle Heatherington y Bay View Management Claims, Inc.

Luego de estudiados los hechos, así como el derecho aplicable, modificamos la sentencia enmendada apelada a los efectos de disponer que con respecto a la responsabilidad de la Asociación de Garantías de Seguros Misceláneos, dicha entidad deberá pagar hasta un máximo de ciento cincuenta mil dólares ($150,000.00) por cada reclamación presentada por cada uno de los demandantes-apelados.

## I

El 5 de octubre de 1993, la parte demandante-apelada, Empress, Carl, Anthony y Loraine de apellido Palermo, presentaron demanda contra Benj. Acosta, Inc.; los esposos Acosta-González; Jaime Acosta; Benjamín Acosta, Jr.; Ricardo Acosta; Bay View Claims Management, Inc.; Isabelle Heatherington; Emiliano H. Ruiz y Agustín Cofán por sí y en representación de la Sociedad Legal de Gananciales compuestas con sus respectivas esposas de nombres desconocidos; Wildco Construction y las compañías aseguradoras de nombre desconocido. En la referida demanda, la parte demandante-apelada alegó que el ajustador Benjamín Acosta Robles y Benj. Acosta, Inc., mediante su conducta intencional y/o negligente, y valiéndose de sus agentes co-demandados Emiliano H. Ruiz, Agustín Cofán y Benjamín Acosta González, dilataron de mala fe e interfirieron en la relación del contrato de seguros que tenía el asegurado Empress con la aseguradora Insurance Company of Florida (en adelante I.C.F.), lo que conllevó que ésta no efectuara el pago de la reclamación previo a esta aseguradora irse a la insolvencia en enero de 1993. (Ap. Apelación, a las págs. 2-6.).

El 4 de febrero de 1994, la parte codemandada-apelante, los esposos Acosta-González y Benj. Acosta, Inc., presentaron ante el Tribunal de Primera Instancia su escrito de contestación a la demanda. (Ap. Apelación, a las págs. 10-18.)

El 2 de enero de 1996, luego de que la parte demandante-apelada y los codemandados Jaime y Ricardo de apellido Acosta presentaran ante el foro de instancia una solicitud de desistimiento con perjuicio, dicho foro dictó sentencia parcial dando por desistida con perjuicio la causa de acción presentada por la parte demandante-apelada contra los codemandados Jaime y Ricardo Acosta. (Ap. Apelación, a la pág. 742.)

Así las cosas, el 20 de febrero de 1996, la parte demandante-apelada presentó ante el foro de instancia demanda enmendada a los efectos de sustituir a la compañía aseguradora de Benjamín Acosta, Inc., el Fénix de Puerto Rico, así como a otras partes de nombre desconocido. (Ap. Apelación, a las págs. 19-29.) El 14 de mayo de 1996, la parte codemandada-apelante, los esposos Acosta-González y Benj. Acosta, Inc., presentaron su escrito de contestación a la demanda enmendada. (Ap. Apelación, a las págs. 31-43.) El 21 de junio de 1996, El Fénix de Puerto Rico presentó por su parte su escrito de contestación a la demanda enmendada. (Ap. Apelación, a las págs. 44-48.)

El 27 de agosto de 1997, el Tribunal de Primera Instancia, emitió una sentencia parcial declarando con lugar la solicitud de la parte codemandada-apelante de que se desestimaran las alegaciones del Párrafo 11 de la Demanda Enmendada respecto a la causa de acción por persecución maliciosa presentada en su contra. (Ap. Apelación, a la pág. 51.)

Para junio de 1998, la parte codemandada-apelante, Benj. Acosta, Inc. y Benjamín Acosta Robles por sí y en representación de la Sociedad Legal de Gananciales constituida con Josefina González, presentó ante el foro de instancia moción solicitando se dicte sentencia sumaria. (Ap. Apelación, a las págs. 52-63.) Mediante la referida moción, la parte codemandada-apelante planteó que al amparo de las doctrinas de cosa juzgada e impedimento colateral por sentencia procedía la desestimación de la demanda. En específico, dicha parte alegó que el Comisionado de Seguros mediante carta dirigida a Carl Palermo, presidente del Empress, resolvió y concluyó que luego de realizar una investigación exhaustiva de las actuaciones de Benj. Acosta, Inc. no se desprendían hechos constitutivos de violaciones al Código de Seguros ni a su Reglamento. (Ap. Apelación, a la pág. 53.) También señaló que dicho dictamen no fue objeto de reconsideración, ni de revisión judicial y que al ser las alegaciones de la querella iguales a la de demanda enmendadas por lo cual ya la controversia sobre dicha parte había sido adjudicada. (Ap. Apelación, a la pág. 53.) Además, alegó que la parte demandante-apelada le habían resarcido totalmente los daños alegados en la demanda enmendada de acuerdo a su propia admisión contenida en la estipulación suscrita por dicha parte con la Asociación de Garantías de Seguros Misceláneos, al haber advenido insolvente The South Insurance Company of Florida, en la cual se aceptaba la cantidad de ciento treinta mil dólares ($130,000.00) como resarcimiento total de los daños y perjuicios sufridos. (Ap. Apelación, a las págs. 55-56.) Por último, alegó que por haber sido archivada la querella ante el Comisionado de Seguros y habiendo sido alegadamente transado el caso con la Asociación de Garantías de Seguros Misceláneos, la parte demandante-apelada se encontraba impedida de proceder con la demanda enmendada al amparo de la doctrina de impedimento colateral por sentencia y cosa juzgada. (Ap. Apelación, a la pág. 56.)

El 30 de junio de 1998, el Tribunal de Primera Instancia le concedió veinte (20) días a la parte aquí demandante-apelada para que replicara a la moción en solicitud de sentencia sumaria presentada por la parte codemandada-apelante, Benj. Acosta, Inc. y Benjamín Acosta Robles por sí y en representación de la Sociedad Legal de Gananciales constituida con Josefina González. El 15 de julio de 1998, la parte demandante-apelada presentó ante el foro de instancia Oposición a Moción Solicitando se Dicte Sentencia Sumaria. (Ap. Apelación, a las págs. 64-67.) Para el 15 de octubre de 1998, se celebró en el foro de instancia una vista argumentativa en la cual se discutió la solicitud de sentencia sumaria y su oposición. El 10 de noviembre de 1998, los codemandados-apelantes, Benj. Acosta, Inc. y los esposos Acosta-González, presentaron Moción de Sentencia Sumaria Suplementaria, a la cual se opuso la parte aquí demandante-apelada el 11 de marzo de 1999.

Finalmente, el 31 de marzo de 1999, el foro de instancia dictó sentencia sumaria desestimando y declarando sin lugar la demanda enmendada. El foro de instancia expresó en la misma que: *"[h]abiendo sido las reclamaciones esbozadas en la demanda de epígrafe, resueltas administrativamente y resarcidas vía estipulación de transacción y de impedimento colateral por sentencia. En cuanto a la reclamación por libelo y daños en contra de estos codemandados, entendemos que además de estar prescritas, no proceden en derecho"*. (Ap. Apelación, a la pág. 81.)

Inconforme con dicha determinación, el 28 de abril de 1999, la parte aquí demandante-apelada, Empress y Carl, Anthony, Linda y Loraine todos de apellido Palermo, presentaron ante el entonces denominado Tribunal de Circuito de Apelaciones, el recurso de apelación KLAN-99-00428. Mediante el referido escrito de apelación, los aquí demandantes-apelantes plantearon que se cometieron los siguientes errores: primero, que incidió el tribunal de instancia al aplicar a los hechos de la siguiente controversia la doctrina de cosa juzgada con relación a una determinación de una agencia administrativa y de una sentencia previa que había dictado el entonces Tribunal Superior, Sala de San Juan, acogiendo una transacción por estipulación de las partes; segundo, que erró al resolver que las causas de acción presentadas estaban prescritas; y tercero, que erró al disponer sumariamente un pleito complejo en el cual existen hechos materiales en controversia.

Luego de varios trámites procesales, el 28 de septiembre de 1999, el entonces Tribunal de Circuito de Apelaciones dictó sentencia en caso KLAN-99-00428 revocando la sentencia dictada por el foro de instancia, pues al caso de autos no le aplicaba la doctrina de cosa juzgada ni impedimento colateral por sentencia. En

específico dispuso lo siguiente:

*"[...]*

*El caso número KAC-93-1431(902), se instó al amparo del Capítulo 38 del Código de Seguros y figuraban como partes, Empress, I.C.F. y la Asociación. La sentencia se dictó por estipulación, la cual claramente relevaba de responsabilidad sólo a I.C.F. y la Asociación. Si bien es cierto que el relevo de responsabilidad era contra cualquier reclamación alegada o no en la demanda con relación al fenómeno atmosférico descrito en la misma, no es menos cierto que el tribunal, de manera correcta en derecho, limitó el alcance de la misma sólo a los demandados, I.C.F. y la Asociación, según lo acordado por las partes. El Tribunal de Primera Instancia, Sala de Carolina, incidió al extender una transacción a personas que claramente no fueron parte en la misma.*

*En el pleito número KAC-93-1431(902), las partes no eran las mismas, por lo que no se configuró la identidad de partes para que aplique la doctrina de cosa juzgada, así como que tampoco se trata de la misma causa de acción. El primer pleito era al amparo de la legislación especial de seguros y el segundo es sobre daños y perjuicios, fraude y otro tipo de alegaciones que requieren de presentación de prueba, que inclusive puede ser distinta. Por lo tanto, el primero era estrictamente para cobrar un reclamo de la compañía de seguros y el otro se trataba de otras partes y otras reclamaciones, inclusive en daños."*

Tampoco es aplicable al caso de autos la doctrina de cosa juzgada, relacionada con procedimientos administrativos. Entre el procedimiento ante la Oficina del Comisionado de Seguro y el presente pleito no se da la identidad de partes que la doctrina requiere. El proceso ante la Oficina del Comisionado de Seguros era de naturaleza investigativa y la parte apelante, en específico Carl Palermo, no fue parte. Además, Empress desistió de dicha querella voluntariamente porque escogió el foro judicial para ventilar su causa de acción donde presentó otras reclamaciones.

Finalmente, tampoco se dan en estas circunstancias la identidad de causas de acción, pues en el presente pleito, el apelante Carl Palermo reclama una indemnización por daños, lo cual no pudo hacer en la agencia administrativa porque la agencia no puede conceder este tipo de remedio.

(Ap. Apelación, a las págs. 165-167.)

Respecto al reclamo de que la causa de acción estaba prescrita, este foro apelativo resolvió en el KLAN-99-00428 que, debido a la complejidad de las controversias planteadas, se le debía permitir a ambas partes presentar prueba en torno al momento en que la parte aquí demandante-apelada tuvo conocimiento de los alegados daños, para determinar si las causas de acción estaban o no prescritas. (Ap. Apelación, a las págs. 165-167.)

De dicha determinación acudió la parte aquí codemandada-apelante, Benj. Acosta, Inc. y los esposos Acosta-González, ante el Tribunal Supremo, el cual denegó el mismo por falta de jurisdicción. (Ap. Apelación, a la pág. 200.)

El 26 de enero de 2001, la parte aquí demandante-apelada presentó ante el Tribunal de Primera Instancia Moción de Desistimiento con Perjuicio con relación a los codemandados Benjamín Acosta Jr. por sí y en representación de la Sociedad Legal de Gananciales compuesta con su esposa Jo Lynn Badke. También, el 7 de febrero de 2001, la parte aquí demandante-apelada presentó ante el foro de instancia Moción de Desistimiento con Perjuicio con relación al codemandado Emiliano H. Ruiz así como su Sociedad Legal de Gananciales. (Ap. Apelación, a las págs. 246-247.) El 8 de febrero de 2001, el codemandante y demandante contra tercero, Ing. Emiliano H. Ruiz, por sí y en representación de la Sociedad Legal de Gananciales, y el tercero demandado, Manuel del Llano, por sí y en representación de la Sociedad Legal de Gananciales, presentaron ante el Tribunal

de Primera Instancia Moción Conjunta Sobre Desistimiento Voluntario con Perjuicio. (Ap. Apelación, a las págs. 248-249.)

Finalmente, el 23 de febrero de 2001, el Tribunal de Primera Instancia dictó tres (3) sentencias parciales desestimando la causa de acción presentada por la parte aquí demandante-apelada contra Benjamín Acosta Jr. por sí y en representación de la Sociedad Legal de Gananciales compuesta con Jo Lynn Badke; Emiliano H. Ruiz y su Sociedad Legal de Gananciales; Agustín Cofán y Wildco Construction. Además, el foro de instancia dictó sentencia parcial desestimando la demanda contra tercero presentada por el Ing. Emiliano H. Ruiz en contra de Manuel Del Llanos y su Sociedad Legal de Gananciales. (Ap. Apelación, a las págs. 258, 260, 262.)

Luego de múltiples desistimientos voluntarios con perjuicios, sólo quedaron como partes demandadas Benjamín Acosta y la Sociedad legal de Gananciales compuesta con Josefina González, Benj. Acosta, Inc. y la Asociación de Garantías de Seguros Misceláneos. Durante el mes de octubre, por espacio de trece (13) días, se celebró la vista del juicio en su fondo.

El 2 de julio de 2002, luego que el foro de instancia dictó sentencia el 21 de marzo de 2002, dictó sentencia enmendada en la que dispuso lo siguiente:

*"SENTENCIA ENMENDADA*

*En virtud de las anteriores determinaciones de hechos y conclusiones de derecho las cuales se hacen formar parte de esta sentencia, este Tribunal declara Con Lugar la demanda y en consecuencia condena a los co-demandados Benj. Acosta Inc., Benjamín Acosta Robles y la Sociedad Legal de Gananciales compuesta con Josefina Robles, y a la Asociación de Garantías Seguros Misceláneos, a pagar solidariamente a la parte demandante las siguientes cantidades:*

*A. A favor de Empress Hotel, Inc.*

*1) Por concepto de pérdida de ingresos futuros por interrupción de negocio: $203,390.00.*

*2) Por concepto de pérdida de ingresos pasados por interrupción de negocio: $260,495.00.*

*3) Por conceptos de dineros pagados por labores, materiales y contenido: $114,393.02*

*B. A favor de Carl Palermo*

*1) Por concepto de sufrimientos y angustias mentales $100,000.00.*

*C. A favor de Anthony Palermo*

*1) Por concepto de sufrimientos y angustias mentales $20,000.00.*

*D. A favor de Lorraine Palermo*

*1) Por concepto de sufrimientos y angustias mentales $20,000.00."*

Se aclara que la Asociación responde exclusivamente hasta $150,000.00. Se le impone además a la parte demandada Benj. Acosta Inc.; Benjamín Acosta Robles y la Sociedad Legal de Gananciales compuesta con Josefina González, el pago solidario de las costas, gastos e intereses al 7% desde el momento de radicarse esta causa de acción, según lo ha establecido el Comisionado de Instituciones Financieras, más $10,000.00 en

concepto de honorarios de abogados por temeridad.

Se enmienda la sentencia del 21 de marzo de 2002 para declarar CON LUGAR el desistimiento con perjuicio solicitado por la parte demandante con relación a las partes en rebeldía Isabelle Heatherington y Bay View Management Claims, Inc.

(Ap. Apelación, a la pág. 873.)

Inconforme con dicha determinación, la parte codemandada-apelante, los esposos Acosta-González y Benj. Acosta Inc., presentaron ante el entonces Tribunal de Circuito de Apelaciones este recurso de apelación. En el mismo plantearon que se cometieron los siguientes errores: primero, que incidió el foro de instancia al imponerle responsabilidad a un ajustador independiente por interferencia culposa de terceros con obligaciones contractuales ajenas cuando alegadamente dicha parte no es un tercero; segundo, que erró al resolver que las causas de acción no estaban prescritas; tercero, que erró al no aplicar al caso de autos las doctrinas de cosa juzgada e impedimento colateral por sentencia; cuarto, que procede reducir del monto de la sentencia la suma de ciento veintinueve mil novecientos dólares ($129,900.00) que ya fueron cobrados; quinto, incidió el foro apelado al evaluar los daños de ingresos pasados y futuros por interrupción de negocio y daños morales; sexto, incidió al imponer honorarios de abogados por temeridad y séptimo, erró al limitar la responsabilidad de la Asociación de Garantías de Seguros Misceláneos a un máximo de ciento cincuenta mil dólares ($150,000.00).

Luego de varios trámites procesales, Empress y Carl, Linda, Anthony y Loraine Palermo, parte demandante-apelada, así como los codemandados-apelantes, Benj. Acosta Inc. y Benjamín Acosta y la Sociedad legal de Gananciales compuesta con Josefina González, presentaron ante nos el 22 de noviembre de 2002 un resumen de la prueba testifical por estipulación.

Así las cosas, el 5 de diciembre de 2002, la parte aquí demandante-apelada presentó ante este Tribunal de Apelaciones Moción Urgente Sobre Anomalía Procesal. Mediante la referida moción, la parte aquí demandante-apelada planteó que como en el caso de autos existen dos (2) partes a las cuales se les emplazó por edictos y a quienes se les anotó la rebeldía, Bay View Management Claims e Isabelle Heatherington, se requería que la notificación de la sentencia de la cual acuden ante nos a tenor con la Regla 65.3 de Procedimiento Civil, 32 L.P. R.A. Ap. III, R. 65.3, y la norma dispuesta en el caso de *Falcón Padilla v. Maldonado Quirós,* 138 D.P.R. 983 (1995), se les notificara a dichas partes mediante la publicación de un (1) edicto una (1) vez por dos (2) semanas consecutivas en un periódico de circulación general. Además, alegó que en el caso de autos la notificación de la sentencia, mediante la publicación de edictos, se hizo solamente una (1) vez en lugar de dos (2) veces según lo acreditara el periódico The San Juan Star mediante misiva de 3 de diciembre de 2004, por lo cual solicitaron la desestimación de recurso por prematuro. Ese mismo día, la Asociación de Garantías de Seguros Misceláneos compareció ante nos mediante Oposición a Moción Conjunta Sobre Resumen de la Prueba Testifical.

El 9 de diciembre de 2002, este foro emitió una resolución concediéndole a la parte aquí codemandada-apelante, Benj. Acosta, Inc. y los esposos Acosta-González, un término de veinte (20) días para exponer su posición en torno a la alegación de que la sentencia emitida por el Tribunal de Primera Instancia no fue notificada conforme a derecho. Respecto a la oposición de la Asociación de Garantías de Seguros Misceláneos sobre el resumen de la prueba testifical, el mismo se dejó en suspenso hasta que se resolviera el aspecto jurisdiccional.

El 26 de diciembre de 2002, la parte demandada-apelante, Benj. Acosta, Inc. y Benjamín Acosta Robles, por sí y en representación de la Sociedad Legal de Gananciales constituida con Josefina González, presentó moción titulada *"Comparecencia en Torno a Resolución de 9 de diciembre de 2002"*. Mediante dicha resolución le solicitó a este Tribunal que paralizara toda consideración respecto a la Moción Urgente Sobre Anomalía Procesal presentada por la parte demandante-apelada, Empress y Carl, Anthony y Loraine, todos de apellidos

Palermo, hasta tanto el Tribunal Supremo resolviera la solicitud de *certiorari* (recurso número CC-2002-925) presentada por dicha parte ante su consideración. La solicitud de *certiorari* que se encuentra pendiente ante el Tribunal Supremo es la revisión de la sentencia emitida por este Tribunal el 31 de octubre de 2002 en el caso KLCE-02-00962, en el cual este Tribunal dispuso del incidente de costas sobre la sentencia del Tribunal de Primera Instancia de 2 de julio de 2002, la cual motivó el presente recurso de apelación. Así las cosas, el 8 de enero de 2003, la parte demandante-apelada presentó *"Moción en Oposición a Comparecencia en Torno a Resolución de 9 de diciembre de 2002"*, por medio de la cual solicitó la desestimación del presente recurso de apelación por ser prematuro.

El 15 de enero de 2003, el Tribunal de Circuito de Apelaciones desestimó el recurso de autos por entender que el mismo había sido presentado de manera prematura. La Asociación de Garantías de Seguros Misceláneos, el 5 de febrero de 2003, presentó moción en solicitud de reconsideración. El 14 de febrero de 2003, este foro emitió una Resolución ordenándole a la parte aquí codemandada-apelante, Benj, Acosta, Inc. y los esposos Acosta-González, que en el término de diez (10) días presentara su posición. El 19 de febrero y 3 de marzo de 2003, compareció la parte demandante-apelada y codemandada-apelante respectivamente, mediante sus mociones en oposición a la solicitud de reconsideración presentada por la Asociación de Garantías de Seguros Misceláneos.

Finalmente, el 10 de marzo de 2003, este Tribunal de Apelaciones emitió una resolución en reconsideración dejando sin efecto su sentencia de 15 de enero de 2003, mediante la cual desestimó el recurso por prematuro, por lo que procedió a reabrir el caso.

Luego de múltiples trámites procesales, el 14 de mayo de 2003, todas las partes presentaron Moción Conjunta en Cumplimiento de Orden mediante la cual estipularon exposición narrativa de la prueba oral.

El 15 de mayo de 2003, Empress y Carl, Anthony y Lorraine, de apellido Palermo, parte demandante-apelada, presentó su alegato en oposición. El 2 de julio de 2003, la Asociación de Garantías de Seguros Misceláneos presentó su escrito en oposición.

Hasta el momento no ha comparecido Bay View Management, Inc. e Isabelle Heatherington, por lo cual con el beneficio de la comparecencia de las partes que hasta el momento han comparecido así como con la exposición narrativa de la prueba por estipulación de las partes, nos encontramos en posición de resolver.

## II

La parte aquí codemandada-apelante, los esposos Acosta-González y Benj. Acosta, Inc., nos plantean en su primer y segundo señalamiento de error, que incidió el foro de instancia al imponerle responsabilidad como ajustador independiente por la doctrina de interferencia culposa de terceros con obligaciones contractuales ajenas cuando alegadamente se debe entender que dicha parte no es un tercero.

No le asiste la razón. Veamos porqué.

## A

### Interferencia Culposa de Terceros con Obligaciones Contractuales Ajenas

El Tribunal Supremo de Puerto Rico, desde el caso de *Gen. Office Prods. v. A.M. Capen´s Sons,* 115 D.P.R. 553 (1984), reconoció por primera vez que el Artículo 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5141, permite la acción por interferencia culposa de terceros con obligaciones contractuales ajenas. Véase: *Dolphin Int´l of P.R. v. Ryder Truck Lines*, 127 D.P.R. 869, 879 (1991); *Jusino Figueroa v. Walgreens*, Opinión de 1 de noviembre de 2001, **2001 J.T.S. 154,** a la pág. 372.

En específico, el Artículo 1802 del Código Civil, *supra*, dispone que *"[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado"*. Véase: *Pons Anca v. Engebretson*, Opinión de 30 de septiembre de 2003, **2003 J.T.S. 151**; *Valle Izquierdo v. E.L.A.*, Opinión de 14 de mayo de 2002, **2002 J.T.S. 70**, a la pág. 1139.

Una acción en daños contra un tercero por interferencia culposa, es aquélla que dicha parte hace con intención cuasidelictual o culposa, que interferir con las relaciones contractuales de otro. *Jusino Figueroa v. Walgreens, supra*. Se dice cuasidelictual o culposa, porque la doctrina exige que, para incurrir en responsabilidad, el tercero que interfiere debe saber que ha de producir la lesión. *Id*. Véase, además: L. Diez-Picazo y A. Gullón, *Sistema de Derecho Civil*, 3ra ed., Madrid, Ed. Tecnos, 1982, Vol. II, pág. 109. Asimismo, se ha dispuesto que la responsabilidad del tercero que interfiere con el contrato es compartida solidariamente con el contratante que, a sabiendas, lo incumple. *Ibid*.

Reiteradamente se ha dispuesto que los elementos constitutivos de la acción de interferencia culposa de terceros con obligaciones contractuales ajenas son cuatro; a saber, debe probarse: 1) la existencia de un contrato; 2) que medió culpa, es decir, que el tercero actuó intencionalmente, con conocimiento de la existencia del contrato y que, al interferir con éste, se causaría perjuicio; 3) que se ocasionó un daño; y 4) un nexo causal entre el daño y el acto culposo, o sea, que el daño fue consecuencia de la actuación culposa del tercero. *Jusino Figueroa v. Walgreens, supra; Dolphin Int'l of P.R. v. Ryder Truck Lines, supra; Gen. Office Prods. v. A. M. Capen´s Sons, supra*, a la pág. 559.

### B

Según surge del expediente ante nuestra consideración, no existe controversia respecto a que entre I.C.F. y Empress existía una relación contractual de seguros contenida en la póliza número 28-00635. Dicha póliza tenía una fecha de vigencia de 7 de febrero de 1990 al 7 de febrero de 1993. Debido a las fuertes marejadas que sufrió para el 1991 la costa norte de Puerto Rico, en específico el sector costero de Isla Verde, Carolina, lugar en el cual esta situado el hotel Empress y a los daños que sufrió por este incidente dicha hospedería, fue que le reclamó a I.C.F. los daños sufridos.

El 18 de noviembre de 1991, luego de que inicialmente I.C.F. a través de sus ajustadores de la Florida, Bay View Management Claims, Inc., le hubiera asignado la reclamación del Empress a la firma Acosta Adjustment, Inc. la misma es relevada del caso y sustituida por la firma independiente de ajustadores Benj. Acosta, Inc.

Del expediente ante nuestra consideración surge que para el 19 de diciembre de 1991, Benj. Acosta, Inc. le envió a la señora Isabelle Heatherington, representante de Bay View Management Claims, Inc., una misiva en la cual le notificaba que tenía razones para creer que gran parte de la estructura sobre la cual se estaba haciendo la reclamación, había sido construida de manera clandestina y sin los permisos correspondientes. Además, Benj. Acosta, Inc. informó que el Empress aparentemente tenía problemas legales con el Departamento de Recursos Naturales y con el Municipio de Carolina en relación a este asunto, y que tenía razones para creer que gran parte de la estructura afectada estaban ilegalmente fuera de los linderos de la propiedad. Dicha misiva en la parte pertinente lee como sigue:

*"[...]*

*2. We have reasons to believe that the greater part of the structure for which the claims is being made was constructed clandestinely and without approved design and/or plans. We are seeking copy of the Government Permits Office file on this property, in connection with which, there appears to be a legal problem with the Department of Natural Resources, the Permits Office and the Municipality of Carolina, Puerto Rico.*

*3. We have reason to believe that the greater part of the affected structure lies illegally outside of the lot*

*lines. In this regard a survey of the lot is underway, as well as a title search in the corresponding Property Registry Office.*

*[...]".*

(Ap. Apelación, a las págs. 368-369.)

Al respecto, Benjamín Acosta Robles aceptó que lo expresado en la misiva de 19 de diciembre de 1991 no se basó en ningún estudio pericial sobre la necesidad de permisos, sino en su experiencia como vecino del área desde 1935, fecha desde la cual reside en la Urbanización Biascochea, lugar donde también ubica el Empress. (E.N.P.E., a las págs. 7, 14-15.)

Estas actuaciones de Benj. Acosta, Inc. tuvieron el efecto de paralizar el pago de la reclamación hecha por Empress a I.C.F., sin que las mismas tuvieran base alguna, pues su impresión se fundamentó en su experiencia como vecino del área. Las actuaciones de Benj. Acosta, Inc., a pesar de ser un ajustador independiente, tuvieron el efecto de interferir torticeramente con la relación contractual del asegurado, pues Acosta actuó de forma arbitraria y negligente en el desempeño de sus funciones, ya que las expresiones hechas respecto a Empress no resultaron ser ciertas. La empresa ajustadora dejó de actuar a base de sus responsabilidades como tal para llevarse por los intereses personales del Sr. Acosta como vecino del área.

Además, el 19 de mayo de 1992 y luego de que hubieran transcurrido seis (6) meses de que la parte aquí demandante-apelada desde la ocurrencia y reclamación de los daños, Benj. Acosta, Inc. le envió una carta a Diego Vidal, agente de seguros que le notificó a I.C.F. la reclamación de Empress, donde le informaba que según la investigación realizada con la ayuda del contratista Cofán, el ingeniero estructural, Ing. Emiliano Ruiz, el agrimensor Héctor Santiago y el ingeniero Miguel Carbuccia, habían concluido: 1) que los daños sufridos por el Empress se limitaban a unas estructuras que sobresalían de las colindancias del solar, por lo que no constituían interés asegurable, a menos que tuviesen los permisos; 2) que las estructuras eran sencillas y fáciles de reparar; y 3) que desde el primer momento hicieron claro que los daños en la plataforma en nada interrumpían las operaciones del hotel. También, afirmaron en esta carta que Ruiz, Carbuccia y Cofán estimaban que el costo de las reparaciones era cincuenta mil dólares ($50,000.00) y que varías de las condiciones reclamadas eran preexistentes al momento de las marejadas, habiendo sido ya resarcidas por Reliant Insurance Company con motivo del huracán Hugo. (Ap. Apelación, a las págs. 623-624.) No obstante, lo anteriormente expuesto, según surge de la exposición narrativa de la prueba por estipulación de las partes ni Ruiz, Carbucia y Cofán le informaron a Benj. Acosta Inc. que no existía interés asegurable por estar las estructuras construidas fuera del solar y sin los permisos correspondientes, ni que alguno de los daños reclamados eran preexistentes y que habían sido ya resarcidos por Reliant Insurance Company. (E.N.P.E., a las págs. 9-10 y 13.) Por ello, es que hasta que estos extremos no se aclararan, I.C.F. no podía proceder con el pago de la reclamación hecha por Empress.

De conformidad con lo anteriormente expresado, entendemos, al igual que lo hizo el foro de instancia, que las expresiones de la carta de 19 de mayo de 1992 cursada por Benj. Acosta Inc. a I.C.F. se hicieron de forma negligente, pues las mismas se hicieron sin que se tuviera información o evidencia para sustentarlas y tuvieron el efecto de levantar controversia sobre la cubierta y los daños reclamados por Empress.

Benj. Acosta, Inc., por medio de sus actuaciones no justificadas y sin fundamento alguno, ajenos a su deber como ajustador, tuvo el efecto de interferir de manera culposa con la relación contractual existente entre Empress e I.C.F., mediante el contrato de seguro, evitando así que la primera pudiera cobrar de la segunda la póliza de seguros que existía a su favor, la cual aseguraba el riego de los daños ocasionados a su negocio por las marejadas de 1991 en el área de Isla Verde. En ese sentido, el ajustador actuó con deshonestidad o mala fe, lo que éste admite en su escrito de apelación, pág. 18, que da lugar a una causa de acción en daños en su contra

por parte del asegurado.

## III

La parte aquí codemandada-apelante, Benj. Acosta, Inc. y los esposos Acosta-González, nos plantean en su tercer señalamiento de error que erró el Tribunal de Primera Instancia al resolver que las causas de acción no estaban prescritas.

No le asiste la razón. Veamos.

## A

**La prescripción en los casos de daños y perjuicios**

Bajo nuestro sistema de derecho, la figura de la prescripción es materia de derecho sustantivo regida por las disposiciones del Código Civil. *Maldonado Vega v. Russe Santiago*, Opinión de 8 de febrero de 2001, **2001 J.T. S. 17**, pág. 834; *Vega v. J. Pérez & Cía., Inc.*, 135 D.P.R. 746, 753 (1994). La prescripción constituye una forma de extinción de un derecho debido a la inercia en ejercerlo por su titular, durante un tiempo determinado. *Santiago Rivera v. Ríos Alonso*, opinión de 7 de febrero de 2002, **2002 J.T.S. 21**, pág. 714; *Galib Frangie v. El Vocero*, 138 D.P.R. 560, 566 (1995).

El propósito de la institución de la prescripción es castigar la inercia en el ejercicio de los derechos y asegurar así el tráfico jurídico, al evitar litigios difíciles de adjudicar por la antigüedad de sus reclamaciones. *Vera Morales v. Bravo Colón*, Opinión de 27 de febero de 2004, **2004 J.T.S. 40**, a la pág. 740; *Padín Espinosa v. Co. de Fomento*, Opinión de 25 de febrero de 2000, **2000 J.T.S. 44**, pág. 759; *Zambrana Maldonado v. E.L. A.*, 129 D.P.R. 740, 751 (1992). El Tribunal Supremo expresó respecto a la prescripción extintiva que:

"...

*La institución de la prescripción extintiva aspira a asegurar la estabilidad de la propiedad y la certidumbre de los demás derechos. Su innegable necesidad y valor corresponden a una presunción legal de abandono, derivado del hecho del transcurso de un tiempo determinado sin reclamar un derecho. [...]. Sin embargo, ninguno de los intereses a los cuales que responde es absoluto – de un lado salvaguardar un derecho y del otro darle carácter definido a la incertidumbre de una posible reclamación–, sino que deben ser aquilatados en su justa proyección."*

*Colón Prieto v. Géigel*, 115 D.P.R. 232, 243 (1984).

El Artículo 1861 del Código Civil establece que las acciones prescriben por el mero lapso del tiempo fijado por la ley. Una vez transcurre el período de tiempo establecido por ley, sin que el titular del derecho lo reclame, surge una presunción legal de abandono. 31 L.P.R.A. sec. 5291; *Galib Frangie v. El Vocero de P.R., supra; Zambrana Maldonado v. E.L.A., supra*, pág. 752.

Por su parte, el Artículo 1868 del Código Civil establece que prescriben al año las obligaciones derivadas de culpa o negligencia, es decir, las que surgen al amparo del Artículo 1802, *supra*, desde el momento que lo supo el agraviado. 31 L.P.R.A. sec. 5298; *Vera Morales v. Bravo Colón, supra*. Es de este artículo que emana la teoría cognoscitiva en las acciones de daños y perjuicios. *Santiago Rivera v. Ríos Alonso, supra; De León Crespo v. Caparra Center*, opinión de 19 de marzo de 1999, **99 J.T.S. 29**, pág. 701.

Nuestro más alto foro ha establecido con respecto al punto de partida para comenzar a contar dicho término prescriptivo de la siguiente manera:

"...

[...]. *Para determinar cuándo comienza a decursar el término prescriptivo, **hemos precisado que el momento que se toma como verdadero punto de partida en una acción de daños y perjuicios lo es la fecha en que el perjudicado conoció del daño; quién fue el autor del mismo; y, además, desde que éste conoce los elementos necesarios para poder ejercitar efectivamente su causa de acción.** (Citas omitidas.)*

...".

*Santiago Rivera v. Ríos Alonso, supra. Véase* además: *Padín Espinosa v. Compañía de Fomento Industrial de P.R., supra.*

Sobre este particular entre las diversas categorías de hechos, se ha reconocido que:

"*[...]. [s]e **hallan la de los daños sucesivos o continuados**; la de los daños instantáneos y permanentes; la del daño cuya extensión o cuantía no se manifiesta de inmediato; la del daño embrionario o latente, no identificable hasta el transcurso de determinado tiempo; la del daño que se oculta dolosamente por el autor; la de los daños múltiples, algunos de los cuales no son descubribles hasta más tarde; y la del daño desconocido, que no viene a detectarse hasta tiempo después del acto culposo.*" Q.M. Scaevola, *Código Civil,* Madrid, Ed. Reus, 1965, T. XXXII, Vol. 2, pág. 881; [...]. (Énfasis suplido.) (Autoridades citadas.)

*Rivera Encarnación v. E.L.A.,* 113 D.P.R. 383, 386 (1982).

Los daños continuados se han definido y con respecto a los mismos se ha establecido lo siguiente:

"*[A]nteriormente habíamos definido a los daños continuados como "aquéllos producidos por uno o más actos culposos o negligentes imputables al actor, coetáneos o no, que resultan en consecuencias lesivas ininterrumpidas, sostenidas, duraderas sin interrupción, unidas entre sí, las cuales al ser conocidas hacen también que se conozcan, por ser previsible, el carácter continuado e ininterrumpido de sus efectos, convirtiéndose, en ese momento, en un daño cierto compuesto por elementos de un daño actual (aquél que ya ha acaecido), y de daño futuro previsible y, por tanto, cierto".*

*[...]*

*Lo determinante para establecer el inicio del término prescriptivo, en los daños continuados, es el momento en que comienza la producción del daño. Es a partir de este momento que comienza a transcurrir el término de un año que tiene el perjudicado para hacer valer su derecho, suponiendo, claro está, que éste tiene conocimiento, desde entonces, de quién es la persona responsable de los mismos.*

*[...]*

*En síntesis, en los daños continuados, precisamente por ser de carácter previsible, el daño cierto incluye todos aquellos daños futuros que se puedan prever. Debido a su previsibilidad, el carácter continuado e ininterrumpido de sus efectos se convierte en daño cierto que incluye el daño acaecido y el daño futuro previsible. Por ser dichos daños futuros previsibles, ciertos y conocidos, el término prescriptivo para instar la acción para su resarcimiento comienza a transcurrir desde que el agraviado tuvo conocimiento del primer daño cierto y puede predecir la ocurrencia de los daños subsiguientes.*"

*Nazario Acosta v. E.L.A. et al.,* Opinión de 30 de junio de 2003, **2003 J.T.S. 116,** a las págs. 1207-1208.

Por otro lado, respecto a los daños sucesivos se ha establecido que:

*"[S]on 'una secuencia de reconocimientos de consecuencias lesivas por parte del perjudicado, las que se producen y manifiestan periódicamente, pero que se van conociendo en momentos distintos entre los que media un lapso de tiempo finito, sin que en momento alguno sean previsibles los daños subsiguientes, ni sea posible descubrirlos empleando diligencia razonable'. Es decir, son aquellos daños que se repiten sin que sea necesario que los mismos sean iguales en magnitud y cuya sucesión no es previsible. Por no ser previsibles, a diferencia de los daños continuados, no podemos incluir como daño cierto, tanto al daño acaecido como a todos los posibles daños futuros que podrían acaecer. Consecuentemente, en vez de tanto el daño acaecido como los daños futuros formar una sola causa de acción con un sólo término prescriptivo que comienza a transcurrir tan pronto se tiene conocimiento del daño acaecido, cada daño constituye una causa de acción distinta, y cada una contiene un término prescriptivo distinto, el cual comienza en momentos distintos a partir del reconocimiento del perjudicado de cada daño individual y de quién fue el autor de los mismos. En síntesis, en el caso de los daños sucesivos, debido a que cada daño constituye una causa de acción independiente por los mismos no ser previsibles, cada una de éstas tiene un término prescriptivo independiente cuyo inicio depende del momento en que el perjudicado sufrió cada uno de los daños."*

*Id.*, a la pág. 1208.

La prescripción no es una figura de derecho rígida, sino que la misma admite ajustes judiciales según sea requerido por las circunstancias particulares de los casos y la noción sobre lo que es justo. *Santiago Rivera v. Ríos Alonso, supra*, pág. 715. *Véase* además: *Maldonado v. Russe*, opinión de 8 de febrero de 2001, **2001 J.T.S. 17**, pág. 834. Por esto se ha establecido que toda disposición sobre prescripción que le exija a los demandantes instar su causa de acción antes de que éstos advengan en conocimiento de que tal acción les asiste, viola su derecho al debido proceso de ley. *Santiago Rivera v. Ríos Alonso, supra*.

## B

Respecto a este señalamiento de error de prescripción, entendemos, al igual que lo hizo el foro de instancia, que la parte aquí demandante-apelada no tenía ninguna causa de acción por interferencia culposa con las relaciones contractuales con el contrato de seguro contra Benj. Acosta, Inc. y los esposos Acosta-González, mientras se estuviera ajustando la reclamación e I.C.F. hubiera tenido la solvencia económica para cumplir con las prestaciones que le imponía el contrato de seguro.

No es hasta el 29 de diciembre de 1992 que el Comisionado de Seguros del Estado de la Florida interviene con la I.C.F. por sus problemas de insolvencia, momento en el cual todos los procedimientos sobre ajuste de la reclamación quedaron suspendidos. Para el 5 de enero de 1993, es que Benj. Acosta, Inc. le notifica a Empress y a sus propietarios que no se continuaría con el ajuste de la reclamación por dicha razón, y es a partir de este momento que se da por terminado el contrato de seguro, ya que por mandato de ley no se puede exigir el cumplimiento de la póliza ante la insolvencia de la compañía aseguradora I.C.F.

Entendemos en el caso de autos que los daños causados por Benj. Acosta Inc. a Empress y sus propietarios son unos de naturaleza sucesiva y de los cuales no se adviene en conocimiento hasta que con certeza se conoce que no se podrá reclamar de la póliza de I.C.F. debido a las dilaciones y negligencia en el manejo de la reclamación por parte de Benj. Acosta Inc., lo cual evitó que I.C.F. pagara a tiempo la reclamación, según ya lo expusimos en la Parte II B de esta sentencia.

Ante este escenario, es forzoso concluir, al igual que lo hizo el foro de instancia, que la causa de acción presentada por Empress y sus dueños en contra de Benj. Acosta Inc. no está prescrita.

## IV

Benj. Acosta, Inc. y los esposos Acosta-González, parte codemandada-apelante, también nos plantean que erró el Tribunal de Primera Instancia al no aplicar al caso de autos las doctrinas de cosa juzgada e impedimento colateral por sentencia, por lo cual procede reducir del monto de la sentencia la suma de ciento veintinueve mil novecientos dólares ($129,900.00) que ya fueron cobrados mediante acuerdo de transacción.

Tampoco le asiste la razón. Veamos porqué.

## A

### Cosa juzgada e impedimento colateral por sentencia

La doctrina de cosa juzgada (res judicata) es de tradición civilista. *Acevedo v. Western Digital Caribe, Inc.,* 140 D.P.R. 452, 464 (1996); *Ramos González v. Félix Medina,* 121 D.P.R. 312, 326 (1988); *Lausell Marxuach v. Díaz de Yáñez,* 103 D.P.R. 533, 535 (1975). Esta doctrina esta tipificada en el Artículo 1204 del Código Civil de Puerto Rico, 32 L.P.R.A. sec. 3343, el que dispone al respecto lo siguiente:

"*§3343. Destrucción de las presunciones; cosa juzgada*

*[...]*

*Para que la presunción de cosa juzgada surta efecto en otro juicio, es necesario que entre el caso resuelto por la sentencia y aquél en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron.*

*[...]*

*Se entiende que hay identidad de personas, siempre que los litigantes del segundo pleito sean causahabientes de los que contendieron en el pleito anterior, o estén unidos a ellos por vínculos de solidaridad o por los que establece la indivisibilidad de las prestaciones entre los que tienen derecho a exigirlas u obligación de satisfacerlas.*"

El Artículo 221 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 1793, por su parte establece que:

"*§1793. Efecto concluyente de sentencia o decreto definitivo*

*El efecto de una sentencia o decreto definitivo en una acción o un procedimiento especial ante un tribunal o juez de Puerto Rico o de los Estados Unidos con jurisdicción para pronunciar decreto, es como sigue:*

*(1) En caso de una sentencia o decreto contra una cosa específica, o con respecto a la prueba de un testamento o la administración de los bienes de un finado, o con referencia a la condición o relación personal, política o legal de determinada persona, la sentencia o decreto será concluyente en cuanto al título a la cosa, o al testamento, administración o condición o relación de la persona.*

*(2) En los demás casos, el fallo o decreto, en cuanto a la materia directamente juzgada, será concluyente entre las partes y sus sucesores un interés por título adquirido posteriormente al comienzo de la acción o del procedimiento especial, las cuales estuvieren litigando por la misma cosa, bajo el mismo título y en el mismo carácter, siempre que tuvieren noticia expresa o tácita de estarse substanciando la acción o procedimiento.*" [Énfasis Suplido].

**Se ha establecido respecto a la doctrina de cosa juzgada que la misma:**

*"[S]urte efectos cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y determina mediante sentencia válida y final. Como resultado, tal determinación es concluyente en un segundo pleito entre las mismas partes, aunque estén envueltas causas de acción distintas [...]."*

*A & P General Contractors v. Asociación Caná*, 110 D.P.R. 753, 762 (1981). Además, se ha determinado que la evidencia necesaria para determinar si una sentencia anterior es concluyente y constituye un impedimento para una acción subsiguiente, es inquirir si la misma evidencia sería suficiente para sostener ambas acciones. *Mercado Riera v. Mercado Riera*, 100 D.P.R. 940, 952 (1972). Por ello, si para sostener ambas acciones se necesita evidencia distinta, entonces se trata de causas de acciones diferentes y la primera sentencia no es impedimento para litigar la otra causa de acción. *Id.*

De las anteriores disposiciones estatutarias surge que la defensa de *res judicata* solamente se configura cuando concurren cuatro (4) identidades: cosas, causas, personas y representación. *Worldwide Food Dis., Inc. v. Colón Et Al.*, 133 D.P.R. 827, 834 (1993); *A. & P. Gen. Contractors v. Asoc. Caná, supra,* a las págs. 761-762; *Pagán Hernández v. U.P.R.*, 107 D.P.R. 720, 732 (1978); *Bolker v. Tribunal Superior*, 82 D.P.R. 816, 824 (1961).

La norma jurisprudencial aclaró que para constituirse el requisito de identidad de causas se necesita que *"la nueva acción estuviera como embebida en la primera, o fuese consecuencia inseparable de la misma"*. *Acevedo v. Western Digital Caribe, Inc., supra.* Véase también, *Rodríguez Rodríguez v. Colberg Comas*, 131 D.P.R. 212, 219-220 (1992).

Respecto a la identidad de partes en la defensa de cosa juzgada y en su modalidad de impedimento colateral por sentencia, la jurisprudencia interpretativa *"sigue la regla de la mutualidad, que prohíbe la alegación de cosa juzgada contra una parte ... a menos que ésta fuera parte original o se hallare en relación mutua (privity) con otra"*. *Rodríguez Rodríguez v. Colberg Comas, supra,* a las págs. 220-221.

En resumen, la doctrina de cosa juzgada requiere que estén presentes ciertos requisitos en el caso en cuestión de manera que pueda plantearse, en un segundo litigio, la defensa de cosa juzgada y que el pleito no pueda litigarse nuevamente. Estos requisitos son: (1) que haya una primera sentencia válida, final y firme que adjudique los hechos y resuelva una controversia en sus méritos; (2) que las partes en el primer litigio sean las mismas en el segundo; (3) que en ambos pleitos se trate del mismo objeto o asunto; (4) que en el primer pleito se haya pedido igual remedio que el que se pide en el segundo; y (5) que las partes litiguen en la misma calidad en ambos pleitos. Artículo 1204 del Código Civil, *supra; Bonafont Solis v. American Eagle Executive Airline*, 143 D.P.R. 374 (1997); *Banco de la Vivienda v. Rafael Carlo Ortiz*, 130 D.P.R. 730 (1992); *Negrón v. C.I.T. Fin. Serv.*, 111 D.P.R. 657 (1981); *Pagán Hernández v. UPR*, 107 D.P.R. 720 (1978).

Se ha dispuesto reiteradamente que se considerarán cosa juzgada no sólo las cuestiones litigadas y adjudicadas, sino también aquéllas que pudieron litigarse y adjudicarse con propiedad. *Díaz Maldonado v. Lacot, supra; Figueroa v. Banco de San Juan*, 108 D.P.R. 680 (1979); *Mercado Riera v. Mercado Riera*, 100 D. P.R. 940 (1972).

La jurisprudencia también ha reconocido la figura jurídica del impedimento colateral por sentencia como una modalidad de la doctrina de cosa juzgada en la cual no resulta necesaria la identidad de causas. *Acevedo v. Western Digital Caribe, Inc., supra; A & P General Contractors v. Asoc. Caná*, 110 D.P.R. 753 (1981). El impedimento colateral por sentencia opera *"cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y determina mediante sentencia válida y final... [y] tal determinación es concluyente en un segundo pleito entre las mismas partes, aunque estén envueltas causas de acción distintas."* Fatach v. Seguros

*Triple S, Inc.,* Opinión de 25 de marzo de 1999, **99 J.T.S. 46**, a la pág. 806. *A & P Gen. Contractors, supra,* pág. 762.

El impedimento colateral por sentencia tiene dos modalidades, la ofensiva y la defensiva. En su modalidad ofensiva, un demandante le impide al demandado litigar otra vez los asuntos que previamente litigó y perdió frente a otra parte. La modalidad defensiva surge cuando un demandado impide a un demandante que litigue otra vez asuntos que previamente litigó y perdió frente a otra parte. *Fatach v. Seguros Triple S, Inc., supra; A & P General Contractors v. Asociación Caná, supra,* a la pág. 758.

### B

Estos aspectos sobre la aplicabilidad al caso de autos de la doctrina de cosa juzgada e impedimento colateral por sentencia ya habían sido resueltos por este Tribunal en el caso KLAN-99-00428 en el cual se dictó sentencia el 28 de septiembre de 1999. (Ap. Apelación, a las págs. 165-167.)

Al igual que lo hicimos en aquella ocasión entendemos que la adjudicación por estipulación de las partes hecha por el foro de instancia en el caso KAC-93-1431(902) solamente afectó a I.C.F. y la Asociación de Garantías de Seguros Misceláneos, por lo que dicho dictamen sólo afecta a dichas partes y el mismo no se puede hacer extensivo a partes que no estaban en el pleito.

Es importante señalar que el caso KAC-93-1431(902), en comparación con el caso de autos, no existe identidad de partes ni identidad de causas, por lo que al caso de marras no le es de aplicación la doctrina de cosa juzgada e impedimento colateral por sentencia. El caso KAC-93-1431(902) se presentó al amparo de las disposiciones del Código de Seguros y esta segunda causa de acción es sobre daños y perjuicios, la cual requiere presentación de prueba diferente para su adjudicación.

Por tanto, no procede reducir del monto de la sentencia la suma de ciento veintinueve mil novecientos dólares ($129,900.00) que ya fueron cobrados mediante acuerdo de transacción en el caso KAC-93-1431(902).

Además, tampoco le es aplicable al caso de autos la doctrina de cosa juzgada, relacionada con procedimientos administrativos. La querella administrativa que presentó Empress ante el Comisionado de Seguros el 10 de enero de 1993 contra Benj. Acosta Inc. y los esposos Acosta-González, sobre prácticas desleales en el ajuste de reclamaciones en violación a las disposiciones del Código de Seguros. Entre este procedimiento ante la Oficina del Comisionado de Seguros y la presente causa de acción no se da la identidad de partes que la doctrina requiere. El procedimiento ante la Oficina del Comisionado de Seguros era uno de naturaleza investigativa y el caso de autos es una demanda en daños y perjuicios. Ante este escenario tampoco se da la identidad de causas de acción.

Por ello, concluimos que no incidió el foro de instancia al no aplicarle al caso de autos la doctrina de cosa juzgada e impedimento colateral por sentencia.

### V

Los codemandados-apelantes, Benj. Acosta, Inc. y los esposos Acosta-González, nos plantean que incidió el foro apelado al evaluar los daños de ingresos pasados y futuros por interrupción de negocio y los daños morales.

### A

**Evaluación de los daños y la cuantía adjudicada**

Al medir los daños en un caso, el juzgador debe hacerlo sobre una estricta base de correspondencia con la prueba, siempre procurando que la indemnización de los daños y perjuicios no se convierta en una industria y

no resulte lesiva a nuestra economía. *S.L.G. v. F. W. Woolworth and Co.*, 143 D.P.R. 76, 81 (1997); *Atiles Moreu, Admor v. McClurg*, 87 D.P.R. 865, 877 (1963). Este deber de los juzgadores tiene el propósito del sentido remediador y no punitivo que encarna el Artículo 1802 del Código Civil, *supra. S.L.G. v. F. W. Woolworth and Co., supra.*

La responsabilidad civil por daños y perjuicios es precisamente el deber de resarcir al damnificado, otorgándole un valor económico al daño sufrido. El resarcimiento o indemnización pecuniaria consiste en atribuir al damnificado la cantidad de dinero suficiente para compensar su interés perjudicado. Es como una subrogación real en que el dinero ocupará el lugar de los daños y perjuicios sufridos, y una aplicación pecuniaria que crea una situación patrimonial que equivale a la destruida por el daño causado.

*Id.* Véase además: *García Pagán v. Shiley Caribbean, Ect.*, 122 D.P.R. 193 (1988); *Rodríguez Cancel v. A.E.E.*, 116 D.P.R. 443, 455-456 (1985).

El derecho que deberá ser compensado por daños no puede derrotarse meramente por el carácter especulativo que en alguna medida supone el cómputo de daños. *S.L.G. v. F. W. Woolworth and Co.*, 143 D.P.R. 76, 81 (1997); *Odriozola v. S. Cosmetic Dist. Corp.*, 116 D.P.R. 485, 510 (1985). Por ésto, se ha establecido que los tribunales apelativos no deben intervenir con la estimación de los daños que se hagan, a menos que las cuantías concedidas sean ridículamente bajas o exageradamente altas. *Blás v. Hosp. Guadalupe*, 146 D.P.R. 267, 339 (1998); *S.L.G. v. F. W. Woolworth and Co., supra*, a la pág. 83; *Quiñones López v. Manzano Pozas*, 141 D.P.R. 139, 178 (1996); *Cotto Morales v. Ríos*, 140 D.P.R. 604, 626 (1996); *Rosado v. Supermercado Mr. Special*, 139 D.P.R. 946, 954 (1996). Por ello, la parte que solicita la reducción de la indemnización concedida está obligada a demostrar la existencia de las circunstancias que hace meritorio que se modifique. *Blás v. Hosp. Guadalupe, supra; S.L.G. v. F. W. Woolworth and Co., supra; Quiñones López v. Manzano Pozas*, 141 D.P.R. 139, 179 (1996).

**B**

**Criterios para evaluar la apreciación de la prueba**

En cuanto a la apreciación de la prueba desfilada ante el tribunal de instancia, el alcance de la revisión judicial sobre cuestiones de hecho está regulado por lo dispuesto en la Regla 43.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 43.2, la cual en lo pertinente dispone que:

*"Regla 43.2. Declaración de derechos probados y conclusiones de derechos*

*En todo pleito, el tribunal especificará los hechos probados y separadamente consignará sus conclusiones de derecho y ordenará que se registre la sentencia que corresponda; y al conceder o denegar injunctions interlocutorios, el tribunal, de igual modo, consignará las determinaciones de hechos y conclusiones de derechos que constituyan los fundamentos de su resolución. **Las determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto, a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos.** Las determinaciones de hechos de un comisionado, en tanto en cuanto el tribunal las adopte, serán consideradas como determinaciones de hechos del tribunal. [...]"* [Énfasis Suplido.]

Por ello, el Tribunal Supremo ha establecido que no debemos intervenir con las determinaciones de hechos que hace el juzgador ante quien declararon los testigos y quien tuvo la oportunidad de verlos declarar y apreciar su demeanor, *Ramos Acosta v. Caparra Dairy Inc.*, 113 D.P.R. 357, 365 (1982), a menos que se demuestre que dicho juez actuó con pasión, prejuicio o parcialidad. *Colón v. Kmart*, Opinión de 26 de junio de 2001, **2001 J.T. S. 98**, a la pág. 1484; *Trinidad v. Chade*, Opinión de 18 de enero de 2001, **2001 J.T.S. 10**, pág. 793; *Mun. de*

*Ponce v. Autoridad de Carreteras y Transportación, et. al.,* Opinión de 29 de diciembre de 2000, **2001 J.T.S. 3,** a la pág. 658; *Vélez v. Secretario de Justicia,* 115 D.P.R. 533, 545 (1984). Así, la apreciación de la prueba efectuada por el Tribunal de Primera Instancia merece gran deferencia, por lo que en ausencia de circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto, los tribunales de apelaciones no intervienen en cuanto al trasfondo fáctico determinado por instancia. *Monllor Arzola v. Sociedad de Gananciales,* 138 D.P.R. 600, 610 (1995); *Sánchez Rodríguez v. López Jiménez,* 116 D.P.R. 172, 181 (1985).

No obstante, los foros apelativos pueden dejar sin efecto las determinaciones de hechos del foro de instancia, siempre que del examen de la totalidad de la evidencia el tribunal de revisión queda definitiva y firmemente convencido que un error ha sido cometido, como es el caso en que las conclusiones de hechos están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida. *Maryland Casualty Co. v. Quick Const. Corp.,* 90 D.P.R. 329, 336 (1964).

Es conveniente recordar que al momento de ejercer nuestra función revisora, en casos como el de autos, nuestra decisión debe fundarse, en lo posible, en aquella prueba pericial y documental que haya sido presentada ante el foro de instancia. *Ríos Ruiz v. Mark,* 119 D.P.R. 816, 821 (1987). Por último, debe advertirse que es principio cardinal de derecho que este Tribunal, en el ejercicio de su facultad revisora, tiene amplia discreción en la apreciación de la prueba pericial y documental ofrecida, encontrándose en la misma posición que los tribunales de instancia y pudiendo aun adoptar su propio criterio en la apreciación de ella. *Cruz v. Centro Médico de P.R., supra,* a la pág. 721; *Velázquez v. Ponce Asphalt,* 113 D.P.R. 39 (1982); *Zambrana v. Hospital Santo Asilo de Damas, supra,* a la pág. 522.

## C

Del análisis del expediente ante nuestra consideración, así como de la exposición narrativa de la prueba por estipulación de las partes, entendemos que no incidió el foro de instancia al evaluar la prueba y concederle daños a la parte demandante-apelada por concepto de pérdida de ingresos pasados y futuros, así como la de daños morales.

Según los términos y condiciones de la póliza de seguros suscrita entre Empress y I.C.F. estaba asegurada la pérdida de ingreso por interrupción de negocio. (Ap. Apelación, a la pág. 469.) La parte aquí demandante-apelada como parte de su prueba para probar la pérdida de ingreso por interrupción de negocio presentó al perito economista el señor Leroy López. Al informe rendido por el señor Leroy López, el foro de instancia le dio entero crédito, pues dicho economista utilizó el método de análisis histórico para cuantificar las pérdidas pasadas, método que a su entender mide mejor dichas pérdidas. Dicho perito, en su informe, lo que hace es comparar el ingreso probable por alquiler de habitación para el período posterior al cual ocurrieron las marejadas, octubre de 1991, con los ingresos para el mismo mes para el período de 1990, más un estimado de aumento de nueve punto cuarenta y cinco por ciento (9.45%) de acuerdo a su experiencia del período de julio a octubre de 1991 y su comparación para el 1990. Estimó que los daños por las pérdidas de ingresos pasados ascendían a doscientos sesenta mil cuatrocientos noventa y cinco dólares ($260,495.00). (Ap. Apelación, a las págs. 651-671.)

Respecto a la pérdida por ingresos futuros, el señor Leroy López tomó en consideración que las reparaciones al Hotel Empress tomarían cinco (5) meses y analizando el ingreso promedio mensual del alquiler de las habitaciones, estimó los mismos en doscientos tres mil trescientos noventa dólares ($203,390.00).

Por último, entendemos que no incidió el foro de instancia al adjudicar a Carl Palermo cien mil dólares ($100,000.00) por daños morales y Anthony y Lorraine también de apellido Palermo veinte mil dólares ($20,000.00) por daños morales. La parte aquí codemandada-apelante no nos ha puesto en condición de determinar que el foro de instancia abusó de su discreción en la evaluación de la prueba y adjudicación de los daños morales, por lo que en ausencia de circunstancias extraordinarias o indicios de pasión, prejuicio,

parcialidad o error manifiesto, no intervendremos con dicho dictamen.

## VI

Los codemandados-apelantes, Benj. Acosta, Inc. y los esposos Acosta-González, nos plantean que erró el tribunal al limitar la responsabilidad de la Asociación de Garantías de Seguros Misceláneos a un máximo de ciento cincuenta mil dólares ($150,000.00).

Le asiste la razón. Veamos porqué.

## A

La Asociación de Garantía de Seguros Misceláneos de Puerto Rico fue creada por la Ley Núm. 72 de 17 de agosto de 1991, 26 L.P.R.A. sec. 3801 *et seq.* El propósito de su creación fue establecer un mecanismo para el pago de reclamaciones cubiertas bajo determinadas pólizas de seguro, con el fin de evitar excesivas dilaciones en el pago y evitar pérdidas financieras a los reclamantes o tenedores de pólizas como resultado de la insolvencia de un asegurador. 26 L.P.R.A. sec. 3802; *Montañez López v. U.P.R.,* Opinión de 21 de marzo de 2002, **2002 J.T.S. 40**, a la pág. 852. El estatuto obliga a interpretar liberalmente sus disposiciones para lograr el propósito que persigue. 26 L.P.R.A. sec. 3804. Véase además, *Montañez López v. U.P.R., supra*; *A.A.A. v. Librotex, Inc.,* 141 D.P.R. 375 (1996).

El Artículo 38.080 del Código de Seguros, 26 L.P.R.A. sec. 3808, dispone respecto a los límites de responsabilidad de la Asociación de Garantías de Seguros Misceláneos cuando una compañía aseguradora adviene insolvente, lo siguiente:

*"§3808. —Poderes y deberes*

*(a) La Asociación:*

*(1) Vendrá obligada a pagar reclamaciones cubiertas existentes antes de la determinación de la insolvencia y las que surjan antes de la más temprana de las siguientes:*

*(A) El final del período de 30 días después de la determinación de insolvencia;*

*(B) la fecha de expiración de la póliza; o*

*(C) la fecha en que el asegurado sustituya la póliza u ocasione su cancelación.*

***Tal obligación se satisfará pagando al reclamante una cantidad que no excederá de ciento cincuenta mil (150,000) dólares por reclamación.***

*En ningún caso vendrá obligada la Asociación a pagar a un reclamante una suma en exceso de la obligación del asegurador insolvente bajo la póliza o cubierta de la cual surge la reclamación. [Énfasis suplido.]*

*[...]*

*El Tribunal Supremo ha resuelto respecto a si la suma máxima de ciento cincuenta dólares ($150,000.00) por la cual responde la Asociación de Garantías de Seguros Misceláneos cuando sustituye a una compañía aseguradora que ha advenido a la insolvencia, se trata de una "por reclamación" o ya bien, por "accidente u ocurrencia", que:*

*[...]*

*La distinción fundamental entre los conceptos por "accidente u ocurrencia" y "por reclamación", conforme al uso común en la industria del seguro, es que las cláusulas que establecen máximos "por accidente" u "ocurrencia" han de ser interpretadas **a base de la causa del accidente y no a base de su efecto**. Así pues, cuando una causa próxima, ininterrumpida y continua resulta en daños a más de una persona, **hay un sólo accidente u ocurrencia dentro del significado de la cláusula "por accidente u ocurrencia"**, que limita la responsabilidad del asegurador a cierta cantidad por cada evento, sin importar el número de reclamaciones (causas de acción) independientes que surjan de este accidente u ocurrencia.*

*No obstante, el término "por reclamación" ("each claim") no se refiere a cada accidente u ocurrencia, sino a cada condena de daños independiente ("each jugdment") por la cual el asegurado resulte responsable como consecuencia de un accidente; es decir cada causa de acción independiente. Véase Couch on Insurance 3d, § 172:12, Vol. 12; Annotation, Liability Insurance: what is claim under deductibility-per-claim clause, 60 A.L.R. 4th. 893.*

*El Código de Seguros establece que, como parte de los deberes de la Asociación, ésta vendrá obligada a pagar **reclamaciones cubiertas existentes antes de la determinación de la insolvencia** y tal obligación se satisfará **pagando al reclamante** una cantidad que no excederá de ciento cincuenta mil (150,000) dólares **por reclamación**. 26 L.P.R.A. § 3808."*

*Montañez López v. U.P.R., supra*, a la pág. 855.

Es importante señalar que el Código de Seguros, en su Artículo 38.050, 26 L.P.R.A. sec. 3805, define reclamante como todo aquel asegurado que presente una reclamación como asegurado o toda persona que radique una reclamación por responsabilidad civil.

Además, dicha disposición legal define reclamación cubierta de la siguiente manera:

*"[...]*

*(6) Reclamación Cubierta. – Significa una reclamación no pagada, incluyendo una de primas no devengadas que surja de, y esté dentro de la cubierta y esté sujeta a los límites aplicables de una póliza de seguros a la cual aplique este Capítulo que haya sido emitida por un asegurador, conforme a lo dispuesto en este título si tal asegurador se convierte en asegurador insolvente luego de la fecha de la vigencia de este Capítulo y donde:*

*(a) El reclamante o el asegurado, sea un residente de Puerto Rico al momento en que ocurra el suceso contra el cual se asegura. Para entidades que no sean un individuo, la residencia de un reclamante o de un asegurado es el estado donde radica su sitio principal de negocio al momento de ocurrir el evento asegurado, o*

*(b) la propiedad de la cual surge la reclamación está permanentemente localizada en Puerto Rico.*

*[...]".*

Del lenguaje del estatuto anteriormente transcrito no surge la intención específica de limitar las reclamaciones a aquéllas por accidentes u ocurrencia, ni el número de reclamaciones que puedan configurarse de un accidente en particular. *Montañez López v. U.P.R., supra*, a la pág. 856.

Además, se ha dispuesto que no se puede concluir que la intención del Legislador fue la de limitar la

responsabilidad de la Asociación de Garantías de Seguros Misceláneos a la cantidad de ciento cincuenta mil ($150,000.00), independientemente del número de reclamantes, perjudicados, causas de acción o reclamaciones que pudiesen presentarse motivadas por un accidente u ocurrencia, de haber algún tipo de limitación por accidente u ocurrencia deberá surgir de la póliza suscrita entre las partes. *Id.* Por lo tanto, la Asociación de Garantías de Seguros Misceláneos nunca vendrá obligada a pagar a un reclamante una suma en exceso de la obligación del asegurador insolvente bajo la póliza emitida, la cual no podrá exceder de ciento cincuenta mil dólares ($150,000.00) por cada reclamación. Artículo 38.080 del Código de Seguros, *supra*. Véase además, *Montañez López v. U.P.R., id.*

**B**

En el caso de autos, surge que el foro de instancia, en su dictamen final el cual es objeto de revisión en el caso de autos, determinó que la Asociación de Garantías de Seguros Misceláneos solamente respondía en ciento cincuenta mil dólares ($150,000.00) por la incidencia reclamada.

A tenor con lo dispuesto en el caso *Montañez López v. U.P.R., supra*, la Asociación de Garantías de Seguros Misceláneos en el caso de marras es responsable del exceso de la obligación del asegurador insolvente bajo la póliza emitida hasta un máximo de ciento cincuenta mil dólares ($150,000.00) por cada reclamación.

De conformidad con lo anteriormente expuesto, es forzoso concluir que el foro de instancia se equivocó en su dictamen al imponerle a la Asociación de Garantías de Seguros Misceláneos la obligación de pagar hasta ciento cincuenta mil dólares ($150,000.00) por la incidencia y no por cada reclamación presentada por cada uno de los demandantes-apelados según lo dispone el Artículo 38.080 del Código de Seguros, *supra*. Véase: *Montañéz López v. U.P.R., supra*.

**VII**

Por último, alegan los codemandados-apelantes, Benj. Acosta, Inc. y los esposos Acosta-González, que incidió el foro apelado al imponerle honorarios de abogados por temeridad.

Este señalamiento de error no se cometió. Veamos.

**A**

**Honorarios de abogado**

La Regla 44.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 44.1, dispone, con relación a las costas y los honorarios de abogado, lo siguiente:

*"44.1 Las costas y honorarios de abogado*

*(a) Su concesión. Las costas le serán concedidas a la parte a cuyo favor se resuelva el pleito o se dicte sentencia en apelación, excepto en aquellos casos en que se dispusiera lo contrario por ley o por estas reglas. Las costas que podrá conceder el tribunal son los gastos incurridos necesariamente en la tramitación de un pleito o procedimiento que la ley ordena o que el tribunal, en su discreción, estima que un litigante debe reembolsar a otro.*

*(b) . . .*

*(c) . . .*

*(d) Honorarios de abogado. En caso que cualquier parte o su abogado haya procedido con temeridad o*

*frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta."*

El propósito de imponer honorarios de abogados por temeridad es establecer una penalidad a un litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconvenientes de un pleito. *Rivera v. Tienda Pitusa, Inc.,* 148 D.P.R. 695, 702 (1999); *Fernández v. San Juan Co., Inc.,* 118 D. P.R. 713, 718 (1987).

La imposición de honorarios de abogados de la regla anteriormente citada es una de carácter discrecional. *Blás [sic] v. Hosp. Guadalupe,* 146 D.P.R. 267 (1998); *Fernández v. San Juan Cement Co., Inc.,* 118 D.P.R. 713, 717; *Raluan Corp. v. Feliciano,* 111 D.P.R. 598, 601-602 (1981).

El concepto de temeridad ha sido ampliamente discutido por nuestra jurisprudencia. En términos generales, se considera temeraria toda aquella conducta que haga necesario un pleito que se pudo evitar, que lo prolongue innecesariamente o requiera a la otra parte efectuar gestiones innecesarias. *Blás [sic] v. Hosp. Guadalupe, supra; Hawayek v. A.F.F.,* 123 D.P.R. 526, 537 (1989).

Una acción que amerita honorarios de abogado es cualquiera que haga necesario un pleito que pudo evitarse, que lo prolongue innecesariamente, o que produzca la necesidad de que otra parte incurra en gestiones evitables *Rivera v. Tienda Pitusa, supra; Fernández v. San Juan Co., Inc., supra,* 718-719 (1987).

El Tribunal Supremo de Puerto Rico, en el caso de *Fernández Mariño v. San Juan Cement Co, Inc.,* 118 D. P.R. 713, 719 (1987), resumió las instancias bajo las cuales existe temeridad, de la siguiente manera: 1) contestar una demanda y negar responsabilidad total, aunque se acepte posteriormente; 2) defenderse injustificadamente de la acción; 3) creer que la cantidad reclamada es exagerada y que sea esa la única razón que se tiene para oponerse a las peticiones del demandante sin admitir francamente su responsabilidad, pudiendo limitar la controversia a la fijación de la cuantía a ser concedida; 4) arriesgarse a litigar un caso del que se desprendía *prima facie* su negligencia, y 5) negar un hecho que le conste es cierto a quien hace la alegación. (Citas omitidas).

Al cuantificar los honorarios de abogados por temeridad, los tribunales pueden tomar factores, tales como la naturaleza del litigio, las cuestiones de derecho que presenta el caso, la cuantía en controversia, el tiempo invertido, los esfuerzos y actividad profesional que hayan tenido que desplegarse y la habilidad y reputación de los abogados en el caso. *Blás [sic] v. Hosp. Guadalupe, supra.*

La determinación de si una parte ha sido temeraria o no recae en la discreción del Tribunal de Primera Instancia. No revisaremos esta determinación, a menos que la parte afectada demuestre que el tribunal ha cometido un abuso de discreción o que ha impuesto una partida excesiva de honorarios de abogado. *Cotto Morales v. Ríos,* 140 D.P.R. 604, 626 (1996); *CNA Casualty de P.R. v. Torres Díaz,* 141 D.P.R. 27, 44 (1996); *Bonilla Medina v. P.N.P.,* 140 D.P.R. 294, 305-306 (1996); *Elba A.B.M. v. U.P.R.,* 125 D.P.R. 294, 328-329; *Ramírez v. Club Cala de Palmas,* 123 D.P.R. 339, 349 (1989).

**B**

Al evaluar el expediente ante nuestra consideración, entendemos, al igual que lo hizo el foro de instancia, que la parte aquí codemandada-apelante fue temeraria en la tramitación de su caso, pues por intereses personales, ajenos a los deberes de un ajustador, provocó un litigio que pudo evitarse y luego negó su responsabilidad.

A tenor con lo anteriormente expuesto, entendemos que no incidió el Tribunal de Primera Instancia en su

determinación, pues la parte aquí codemandada-apelante no nos ha puesto en condiciones de determinar que dicho foro abuso de su discreción al hacer su determinación de temeridad, ni que la partida concedida por concepto de honorarios de abogados fuera una excesiva. Por ello, entendemos que no se cometió el error aquí señalado.

## VIII

Por los fundamentos anteriormente expuestos, se modifica la sentencia enmendada apelada a los efectos de disponer que con respecto a la responsabilidad de la Asociación de Garantías de Seguros Misceláneos, dicha entidad deberá pagar cinto cincuenta mil dólares ($150,000.00) por cada reclamación presentada por cada uno de los demandantes-apelados. Se confirma sobre los demás extremos.

Lo acordó y ordena el Tribunal, y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General